UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| **ROSE AMOUGOU NGASSAM** | **Case No: 07 Civ. 8172 (LLS)** |
| **Plaintiff,** | |
| **v.** | **ORAL ARGUMENT REQUESTED** |
| **MICHAEL CHERTOFF,** **Secretary of Department of Homeland** **Security; EMILIO GONZALEZ,** **Director of United States Citizenship &** **Immigration Services, F. GERARD** **HEINAUER, Director of the Nebraska** **Service Center of United States** **Citizenship & Immigration Services** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS MOTION FOR RECONSIDERATION/REARGUMENT**

Bryan Lonegan, Esq.
Jenny-Brooke Condon, Esq.
Jisun Chang (law student intern)
Gal Davidovitch (law student intern)
Center for Social Justice

Seton Hall Law School
833 McCarter Highway
Newark, New Jersey 07102

*Attorneys for Plaintiff*
Rose Ngassam

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   I.   **THE COURT'S** <u>SUA</u> <u>SPONTE</u> **DISMISSAL WAS IMPROPER
DENYING PLAINTIFF THE OPPORTUNITY TO DEMONSTRATE
THAT JURISDICTION EXISTS AND WAS PROPERLY ALLEGED
IN THE COMPLAINT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

   II.   **THE COURT IGNORED CONTROLLING LAW REQUIRING
THE AGENCY TO FOLLOW STATUTORY AND REGULATORY
STANDARDS GOVERNING THE ADJUDICATION OF PETITIONS
FOR DERIVATIVE ASYLUM.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..9

   III.   **THE COURT ERRED IN DISMISSING PLAINTIFF'S COMPLAINT
BASED ON** *HULI V. WAY*, **WHICH DOES NOT BAR JUDICIAL
REVIEW OF AN AGENCY'S FAILURE TO PERFORM
NONDISCETIONARY ACTS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   IV.   **THE COURT ERRED BY DISMISSING PLAINIFF'S COMPLAINT**
<u>SUA</u> <u>SPONTE</u> **WITHOUT CONSIDERING JURISDICTION
UNDER THE APA.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

   V.   **THE COURT ERRED IN FAILING TO CONSIDER ITS JURISDICTION
OVER PLAINTIFF'S CLAIMED DUE PROCESS VIOLATIONS, FOR
WHICH THE APA PROVIDES A CAUSE OF ACTION.** . . . . . . . . . . . . . . . . . . . 19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**STATUTES & REGULATIONS:**

5 U.S.C.A. § 701(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . .. . . . . . . . . . . . . . .18
5 U.S.C.A. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . .. . . . . . . . . . . . . .17
5 U.S.C.A. § 706(2)(B) & (D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20
8 U.S.C. § 1158(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
8 U.S.C. § 1101(b)(1)(A)-(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
28 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
28 U.S.C.A. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17


8 C.F.R. § 103.2(b)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 12
8 C.F.R. § 103.2(b)(16)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 12, 14, 15
8 C.F.R. § 204.2(a)(1)-(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
8 C.F.R. § 204.2(d)(2)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11, 12
8 C.F.R. § 208.21. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
8 C.F.R. § 208.21(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**CASES:**

Abbas v. Dixon, 480 F.3d 636 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Abbott Labroratories v. Gardner, 387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Acosta v. Artuz, 221 F.3d 117 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bell v. Hood, 327 U.S. 678 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . 18

Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Franklin v. Massachusetts, 505 U.S. 788 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Heckler v. Chaney, 470 U.S. 821 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Huli v. Way, 393 F.Supp.2d 266 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . .2, 3, 4, 7, 13, 14, 17

INS v. St. Cyr, 533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Jaskiewicz v. U.S. Dept. of Homeland Security,
Slip Copy, 2006 WL 3431191 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

Johnson v. Robison, 415 U.S. 361 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Lewis v. State of New York, 547 F.2d 4 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8

Lincoln v. Vigil, 508 U.S. 182 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..17, 18

Mojias v. Johnson, 351 F. 3d 606 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . .8

Rodriguez v. Gonzales, 451 F.3d 60 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11

Schonberger v. Serchuk, 742 F.Supp. 108 (S.D.N.Y.1990) . . . . . . . . . . . . . . . . . . . . . . . . . .2, 19

Singh v. United States Dep't of Justice, 461 F.3d 290 (2d Cir. 2006) . . . . . . . . . . . . . . . 9, 12, 13

Snider v. Melindez, 199 F.3d 108 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Soltane v. U.S. Dept. of Justice, 381 F.3d 143 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . .12

Steel Co. v. Citizens for a Better Enviornment, 523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . . 8

United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954) . . . . . . . . . . . . . . . . .9, 13, 20

Wan Shih Hsieh v. Kiley, 569 F.2d 1179 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Webster v. Doe, 486 U.S. 592 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 19, 20

Weinberger v. Salfi, 422 U.S. 749 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Zheng v. McElroy, No. 98 Civ. 1772,
1998 U.S. Dist. LEXIS 15757 (S.D.N.Y. Oct. 7, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 16

## PRELIMINARY STATEMENT

Plaintiff Rose Ngassam respectfully moves for reconsideration of this Court's <u>sua</u> <u>sponte</u> dismissal for lack of jurisdiction over a challenge to an agency decision. Because the Agency's decision turned on a threshold legal determination, rather than upon an ensuant discretionary decision, jurisdiction exists for this Court to review the Agency's actions.

Ms. Ngassam is a torture survivor and political asylee from Cameroon. On September 19, 2007, she filed a complaint with this Court challenging an April 30, 2007 decision by the United States Citizenship and Immigration Service ("USCIS" or "the Agency") denying three asylee-relative petitions filed on behalf of her children. An asylee-relative petition is the vehicle through which asylees may confer derivative asylum on qualifying family members and reunite with them in safety. The adjudication of an asylee-relative petition involves a two-part process. First, the agency must determine whether the relative is statutorily eligible for derivative asylum. Second, if the relative is found statutorily eligible, the agency may grant or deny the petition in its discretion. In this case, the Agency denied the petitions not on the basis of discretion, but based on its legal conclusion that Ms. Ngassam had failed to prove that her children were statutorily eligible for derivative asylum. Specifically, the Agency concluded that the record did not establish that the children were under 21 years of age at the time Ms. Ngassam filed her petitions.

Ms. Ngassam's complaint contends that that Agency failed to abide by nondiscretionary standards for determining her children's eligibility for derivative asylum, a violation of the Agency's own regulations, the Administrative Procedure Act ("APA"), and Ms. Ngassam's due process rights. Her complaint seeks an order from the Court setting aside the Agency's decision as contrary to law and compelling the Agency to follow its own regulations governing the

process for adjudicating asylee-relative petitions.  Ms. Ngassam does not seek to require the Agency to exercise its discretion in any particular manner; she merely seeks to require the Agency to comply with its legal obligations, including the obligation to exercise its discretion over her statutorily eligible relatives.

On September 19, 2007, the day after Ms. Ngassam filed her complaint, this Court issued a <u>sua</u> <u>sponte</u> order dismissing the complaint without prejudice for lack of subject matter jurisdiction, presumably concluding that Ms. Ngassam's complaint challenges a discretionary decision of the Agency.  Ms. Ngassam now seeks reconsideration of that decision based on controlling law that the court overlooked, which would reasonably have altered the Court's conclusion.  <u>See</u> <u>Schonberger v. Serchuk</u>, 742 F. Supp. 108, 119 (S.D.N.Y.1990) (noting that the standard for reconsideration seeks to avoid wasteful repetition of arguments already briefed, considered and decided).  Reconsideration is warranted because the Court's <u>sua</u> <u>sponte</u> dismissal denied Ms. Ngassam the opportunity to be heard and to demonstrate that jurisdiction exists and was properly alleged in the complaint.

The sole authority cited by the Court to justify dismissal, <u>Huli v. Way</u>, 393 F. Supp. 2d 266 (S.D.N.Y. 2005), is distinguishable from the instant matter and does not bar jurisdiction in this case.  In <u>Huli</u>, the court found that it lacked jurisdiction to review an agency's denial of an asylee-relative petition where the applicant did not seek an order compelling the agency to comply with applicable law, but instead solely sought an order compelling the agency to exercise discretion in her favor.  In contrast to <u>Huli</u>, Plaintiff's complaint alleges that the Agency failed to act in accordance with nondiscretionary duties set forth by the Agency's own regulatory scheme. Specifically, Ms. Ngassam asserts that in denying her petitions, USCIS ignored material evidence in the record establishing her children's eligibility for derivative asylum.

Although acknowledging that DNA evidence submitted by Ms. Ngassam unequivocally proved her biological relationship to the children, USCIS failed to consider—or even mention—duplicates of the children's official birth certificates, which establish the children's age. Ms. Ngassam submitted those birth certificates to the Agency on two separate occasions and urged the Agency to consider that evidence in approximately eight letters submitted to the Agency by counsel. Although the Agency's own regulations deem birth certificates to be "primary evidence" of a child's eligibility to reunite with an asylee-mother, the Agency has never considered this evidence. Under the immigration regulations, an agency does not have discretion to ignore evidence in the record, particularly where the regulations deem such evidence to be material.

The complaint also alleges that the Agency, in violation of its own regulations, failed to provide Ms. Ngassam with an explanation for its failure to consider this evidence. If the Agency finds evidence incompetent or unpersuasive, the regulations impose a duty on the Agency to issue a decision on the record explaining its reasoning to the applicant. Jurisdiction is proper in this case because the Agency has a nondiscretionary duty to follow its own regulations and consider evidence properly submitted by an applicant.

Second, unlike the instant case, Huli, a mandamus action, did not involve a claim under the APA. The APA provides courts with authority to set aside unlawful agency actions where the agency fails to comply with governing law. This cause of action is separate and distinct from mandamus, and judicial review is construed broadly under the APA. Here, the Court's failure to consider the APA prior to its sua sponte dismissal constitutes legal error.

Finally, the Court also has jurisdiction to review the constitutional deprivations alleged by Ms. Ngassam, a basis of jurisdiction that the Court erroneously failed to address prior to

dismissal. The complaint alleges that the Agency's failure to follow its own regulations and failure to consider material evidence in the record violated Ms. Ngassam's due process rights. The APA permits courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity" and "without observance of procedure required by law." 5 U.S.C.A. § 706(2)(B) & (D). Jurisdiction is proper because the Agency owed Plaintiff a nondiscretionary duty to determine her children's statutory eligibility for immigration status in accordance with due process guarantees. That constitutional requirement is not altered by the fact that the ultimate grant of asylum or asylee-relative status is subject to agency discretion. The Court's failure to consider its jurisdiction over Plaintiff's due process claims constitutes legal error.

In short, the Court's sua sponte dismissal was erroneous because it misapplied <u>Huli</u>, 393 F. Supp. 2d 266, ignored controlling law requiring the Agency to follow statutory and regulatory standards governing the adjudication of petitions for derivative asylum, and failed to consider its jurisdiction over Ms. Ngassam's APA and due process claims. Accordingly, the Court's order of dismissal should be reversed, the complaint reinstated, and Plaintiff's Order to Show Cause for Preliminary Injunction considered on its merits.

## FACTUAL BACKGROUND

In September 2003, Plaintiff Rose Ngassam filed seven asylee-relative petitions on behalf of her children, whom she was forced to leave behind when she fled Cameroon under threat of torture and death in 2002. (Compl. ¶ 25.) The Agency initially approved Ms. Ngassam's petitions in May and September 2005. (Compl. ¶ 44.)

Later that year, the U.S. Embassy in Cameroon proceeded with visa processing and discovered a problem with the birth certificates submitted by Ms. Ngassam in support of her

4

petitions.  (Compl. ¶ 45.)  Ms. Ngassam later learned through conversations with her family in Cameroon that her abusive husband provided her children with the faulty documents in what she believes was a deliberate attempt to harm her children and cause problems for her in the United States.  (Compl. ¶ 49.)  Since her family sent those documents directly to Ms. Ngassam's counsel, Ms. Ngassam never scrutinized their authenticity.  (Compl. ¶ 48.)  At the time, she did not doubt the authenticity of those birth certificates and had no reason to know that they were not the genuine documents that she left behind in Cameroon when she fled.  Id.

From the moment Ms. Ngassam discovered the problem with those documents in 2005, she has taken every step possible to cure the problem and prove conclusively her children's eligibility to reunite with her in safety.  (Compl. ¶ 49.)  First, she obtained official certified duplicates of the children's birth certificates from the local authorities in Cameroon. (Compl. ¶ 53.)  In correspondence directed to the Agency, Ms. Ngassam made clear that she was withdrawing reliance on the first set of birth certificates and that USCIS should review the actual birth certificates obtained form the local Cameroonian authorities.  (Compl. ¶ 54.)  Next, to alleviate any remaining concerns regarding the children's eligibility for derivative asylum, Ms. Ngassam underwent DNA testing to prove her biological relationship to her children.  (Compl. ¶ 64.)  The DNA test results prove unequivocally that Ms. Ngassam is the biological mother of the children—a fact that USCIS does not dispute.  (Compl. ¶¶ 67 and 73.)

Despite numerous attempts by counsel to receive confirmation from USCIS that the new documentation was received and processed, the Agency never provided such confirmation. (Compl. ¶¶ 51-59.)  Instead, the Agency returned to counsel the authentic birth certificates, suggesting in a cover letter that the birth certificates were unnecessary because the petitions were approved in 2005.  (Compl. ¶ 60.)  Counsel immediately resubmitted the supplemental evidence,

including the official certified duplicates of the birth certificates and an affidavit from Ms. Ngassam explaining why she was submitting them to replace the previous documents.  (Compl. ¶ 63.)

Six months later, USCIS informed counsel that three of Ms. Ngassam's petitions had been reopened for reconsideration.  (Compl. ¶ 68.)  On January 26, 2007, USCIS issued an Intent to Deny.  (Compl. ¶ 69.)  The Intent to Deny indicated that USCIS relied uniquely on the initial documentation and did not address the supplemental submission of the certified duplicates of the children's actual birth certificates.  (Compl. ¶ 69.)

Counsel's response to the Intent to Deny again directed the Agency's attention to the supplemental birth certificates.  Nevertheless, on April 30, 2007, the Agency denied three of Ms. Ngassam's reopened petitions without considering or mentioning this evidence.  (Compl. ¶¶ 71, 73.)

Ms. Ngassam has not seen her children in more than five years.  The birth certificates that the agency ignored establish that Ms. Ngassam's children were born on May 10, 1987 (Brice Marius Teumen, currently age 20), June 22, 1989 (Duclo Romuald Biakop, currently age 18), and April 6, 1990 (Pegui William Tchaptchep, currently age 17).  (Compl. ¶ 68.)   Those children are under 21 years of age and, therefore, eligible under the law to reunite with their mother in safety.

## PROCEDURAL HISTORY

A detailed procedural history of events preceding the filing of this action is set forth in Plaintiff's Complaint, which is incorporated herein.  Ms. Ngassam filed her complaint on September 18, 2007, along with an Order to Show Cause for Preliminary Injunction, and accompanying affidavits, exhibits, and a memorandum of law.  The following day, this Court

denied Plaintiff's Order to Show Cause and dismissed the complaint without prejudice for lack

of jurisdiction, citing <u>Huli v. Way</u>, 393 F. Supp. 2d 266 (S.D.N.Y. 2005).  Plaintiff now files the

instant motion seeking reconsider of that order.

**<u>ARGUMENT</u>**

I.    **THE COURT'S <u>SUA</u> <u>SPONTE</u> DISMISSAL WAS IMPROPER DENYING
      PLAINTIFF THE OPPORTUNITY TO DEMONSTRATE THAT
      JURISDICTION EXISTS AND WAS PROPERLY ALLEGED IN THE
      COMPLAINT.**

        The Court's September 19, 2007 <u>sua</u> <u>sponte</u> dismissal was improper because

Plaintiff can demonstrate that jurisdiction exists under the Administrative Procedure Act

("APA"), as a matter of federal question jurisdiction, and under the mandamus act.  The United

States Court of Appeals for the Second Circuit disfavors <u>sua</u> <u>sponte</u> dismissals because they deny

plaintiffs the opportunity to be heard, which "is often necessary to establish the fairness and

reliability of a dismissal."  <u>Abbas v. Dixon</u>, 480 F.3d 636, 639-640 (2d Cir. 2007) (citing <u>Snider

v. Melindez</u>, 199 F.3d 108, 113 (2d Cir.1999)).  Premature dismissal "may prove wasteful of the

court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit

between the district and appellate courts."  <u>Id.</u>  (quoting <u>Lewis v. State of New York</u>, 547 F.2d 4,

6 (2d Cir. 1976)).  Thus, "unless it is unmistakably clear that the court lacks jurisdiction, or that

the complaint lacks merit or is otherwise defective," the Second Circuit has stated that it "is bad

practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in

opposition."  <u>Id.</u> (quoting <u>Mojias v. Johnson</u>, 351 F.3d 606, 610-11 (2d Cir. 2003) (citation

omitted)); <u>see</u> <u>also</u> <u>Acosta v. Artuz</u>, 221 F.3d 117, 124 (2d Cir. 2000) (noting that failure to

afford an opportunity to respond to a contemplated <u>sua</u> <u>sponte</u> dismissal can be "by itself,

grounds for reversal").

Here, the Court's dismissal was improper because a lack of jurisdiction is not "unmistakably clear." See Lewis, 547 F.2d at 6. Rather, as explained more fully below, Ms. Ngassam's complaint properly alleges jurisdiction under both the APA, as a matter of federal question jurisdiction, and under the mandamus statute. Jurisdiction is proper because Ms. Ngassam seeks review of nondiscretionary agency action—determination of her children's statutory eligibility for derivate asylum. Plaintiff also seeks an order compelling the agency to comply with its own regulations governing adjudication of asylee-relative petitions and to consider the birth certificates submitted in support of her petitions. Because those acts are required by regulation and constitute nondiscretionary duties, this Court has the power to review Ms. Ngassam's complaint.

The Court's summary dismissal of this case should also be reconsidered to ensure that the reasoning for dismissal did "not conflate subject matter jurisdiction with the elements of [the] action's merits." See Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 79 (3d Cir. 2003) (citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998)). The Supreme Court has made clear that "jurisdiction will be sustained if 'the right of the Petitioners to recover under their complaint will be given one construction and will be defeated if they are given another' . . . ." Steel Co., 523 U.S. at 89 (quoting Bell v. Hood, 327 U.S. 678, 685 (1946)).

In this case, whether the Defendants violated a nondiscretionary duty to Ms. Ngassam with respect to the adjudication of her children's asylee-relative status bears on the validity of her cause of action, not the existence of "subject matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate [the] case." Id.; see also Jaskiewicz v. U.S. Dept. of Homeland Security, Slip Copy, 2006 WL 3431191 (S.D.N.Y 2006) ("A case arises under federal law within the meaning of § 1331 [federal question jurisdiction] . . . if a well-pleaded complaint

establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."). Here, Ms. Ngassam's "right to relief necessarily depends on resolution of a substantial question of federal law." Id. at 4. The facts alleged in Plaintiff's complaint, which must be taken as true, allege that the Agency violated a nondiscretionary duty to follow their own regulations governing adjudication of statutory eligibility for derivate asylum. Whether that duty exists is a substantive element of Ms. Ngassam's causes of action under the APA and mandamus—not a jurisdictional prerequisite.

In other words, even if this Court believes Ms. Ngassam's assertions to be legally mistaken, that does not form a basis for a sua sponte dismissal for lack of jurisdiction. Such an action is only proper where her assertions are entirely insubstantial. Accordingly, the Court's dismissal on the basis of jurisdiction was improper and Ms. Ngassam's complaint should be reinstated.

## II. THE COURT IGNORED CONTROLLING LAW REQUIRING THE AGENCY TO FOLLOW STATUTORY AND REGULATORY STANDARDS GOVERNING THE ADJUDICATION OF PETITIONS FOR DERIVATIVE ASYLUM.

The Agency does not have unfettered discretion with respect to the adjudication of asylee-relative petitions. Rather, its discretion is circumscribed by controlling statutes and regulations that set forth the substantive eligibility criteria for derivative asylum and dictate the process for adjudication. The Agency is bound by the derivative asylum statute, its own regulations, and United States Supreme Court and Second Circuit precedent to follow the regulations it promulgated. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954); Singh v. United States Dep't of Justice, 461 F.3d 290, 296 (2d Cir. 2006) (noting that "an administrative agency must adhere to its own regulations"). Moreover, the Second Circuit has

noted even where the Agency has discretion over ultimate grants of immigration benefits, courts have jurisdiction to review whether the alien's eligibility for status was correctly determined by the agency.  See Rodriguez v. Gonzales, 451 F.3d 60, 62 (2d Cir. 2006) (addressing adjustment of status and cancellation of removal).

Here, Plaintiff's complaint alleges that the Agency failed to follow its own regulations by ignoring material evidence in the record relevant to her children's eligibility for derivative asylum, 8 C.F.R. § 204.2(d)(2)(i) (deeming birth certificates to be "primary evidence" of eligibility for asylee-relative status), by failing to apprise Plaintiff of its reasoning with respect to that evidence, 8 C.F.R. § 103.2(b)(8) (requiring Agency to inform applicant when evidence fails to establish eligibility), and by failing to provide her with the opportunity to respond to an adverse determination regarding this evidence, 8 C.F.R. § 103.2(b)(16)(i) (requiring agency to inform applicant of adverse determinations and an opportunity to rebut before a decision is rendered).  The Agency's failure to comply with those nondiscretionary duties is reviewable by this Court.

The derivative asylum statute makes eminently clear that the Agency's adjudication of an application for derivative asylum is not a wholly discretionary act.  The statute, 8 U.S.C. § 1158(b)(3)(A) states that a "child, (as defined in section 1101(b)(1) (A), (B), (C), (D), or (E) of this title), of an alien who is granted asylum under this subsection *may*, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien."  Id.  Thus, the statute dictates two steps for obtaining derivative asylum.  See id.  First, the applicant must be a child as defined by immigration law.  8 U.S.C. § 1101(b)(1)(A), (B), (C), (D), or (E).  Then, after statutory eligibility is established, the Agency "may" grant derivative asylum.  Cf. Rodriguez v. Gonzales, 451 F.3d 60, 62 (2d Cir. 2006)

10

(addressing cancellation of removal and adjustment of status and noting that the agency's adjudication of a petition is "a two-step process:" first, involving an alien "prov[ing] eligibility by showing that he meets the statutory eligibility requirements," and "[s]econd, assuming an alien satisfies the statutory requirements, the Attorney General in his discretion decides whether to grant or deny relief"). Addressing other forms of discretionary immigration relief, the Second Circuit has concluded that "because these two stages are distinct," courts have jurisdiction to review whether alien's eligibility for status was correctly determined by the agency. Id.

Thus, although the Agency possesses discretion under the statute in this instance, that discretion is limited to the second step, and does not apply to the determination of eligibility for derivative asylum or the process by which eligibility determinations are made. See INS v. St. Cyr, 533 U.S. 289, 307-08 (2001) (stating that eligibility for immigration status "that [is] governed by specific statutory standard provide[s] a right to a ruling on an applicant's eligibility even though the actual granting of relief [is] not a matter of right under any circumstances but rather is in all cases a matter of grace") (internal quotation marks omitted). Because Ms. Ngassam's complaint addressed step one in the process for adjudicating asylee-relative petitions, the Court has jurisdiction over this case.

Furthermore, the regulations regarding eligibility for derivative asylum and the process for adjudicating those claims are couched in mandatory terms. The regulations state that a "birth certificate of the child showing the mother's name" is "[p]rimary evidence for a legitimate child." 8 C.F.R. § 204.2(d)(2)(i). The regulations further state that the Agency "*shall* request the missing initial evidence [if it] finds that the evidence submitted . . . does not fully establish eligibility." 8 C.F.R. § 103.2(b)(8) (emphasis added). The Agency's refusal to consider the birth certificates as primary evidence was thus in violation of law.

The regulations go on to state that the applicant for derivative asylum "*shall* be advised" of an adverse conclusion by the Agency "of which the applicant or petitioner is unaware" and "offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered."  8 C.F.R. § 103.2(b)(16)(i) (emphasis added).  Further, the regulations require that the Agency "*shall*" include in the record of proceeding "[a]ny explanation, rebuttal, or information presented by or on behalf of the applicant or petitioner."  Id. (emphasis added).

Here, the Agency gave no explanation whatsoever for its refusal to consider the birth certificates Ms. Ngassam submitted as primary evidence of her children's age and instead rejected that evidence on some entirely unexplained ground.  Courts interpreting the APA have noted that agencies cannot simply ignore relevant evidence, but have an obligation to explain in reasonable detail why evidence submitted into the record is insufficient to meet the applicant's burden of proof.  Soltane v. U.S. Dept. of Justice, 381 F.3d 143, 151-52 (3d Cir. 2004) (noting that agency erred by failing to "explain in any reasonable detail" why letter submitted by the applicant was insufficient to establish her eligibility for a visa) (citing Richard J. Pierce, Jr., 2 Administrative Law Treatise § 11.2 at 791 (2002)); see also Choratch v. Finch, 438 F.2d 342, 343 (3d Cir.1971) ("We think it is not too much to require that an administrative decision that a claimant is not eligible . . . be supported by explicit findings of all facts that are essential to the conclusion of ineligibility.").

The Supreme Court and the Second Circuit have both held in the immigration context that "an administrative agency must adhere to its own regulations."  Singh v. United States Dep't of Justice, 461 F.3d 290, 296 (2d Cir. 2006) (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954)).  Recognizing that the agency may possess discretion over an ultimate

grant of relief, the Supreme Court has held that the agency must, nevertheless, follow its own

"regulations prescrib[ing] the procedure to be followed in processing an alien's application for

[immigration relief]." Accardi, 347 U.S. at 265.  Given the fundamental nature of that principle,

the Second Circuit has held that agencies must abide by their own regulations governing

eligibility for immigration benefits even when the relevant regulations could potentially conflict

with a statute.  Singh, 461 F.3d at 291-92.  These decisions—holding that the agency violated the

law by not following its own regulations, even as to a decision ultimately subject to the agency's

discretion—demonstrate that there is jurisdiction over Ms. Ngassam's claims.

    In short, by issuing a decision that ignored—without explanation—critical evidence

bearing on the children's statutory eligibility for derivative asylum, the Agency violated its own

procedure for adjudication of asylee-relative petitions as set forth by regulation.  Accordingly,

the Agency violated nondiscretionary duties and those actions are reviewable by this Court.

## III.    THE COURT ERRED IN DISMISSING PLAINTIFF'S COMPLAINT BASED ON *HULI V. WAY*, WHICH DOES NOT BAR JUDICIAL REVIEW OF AN AGENCY'S FAILURE TO PERFORM NONDISCRETIONARY ACTS.

    In the order dismissing Plaintiff's complaint, the Court cited Huli v. Way, 393 F. Supp.

2d 266 (S.D.N.Y. 2005), presumably for the proposition that the Court does not have jurisdiction

to review discretionary agency action.  See id. at 270-71.  That case, however, does not control in

this matter because as explained above Plaintiff does not challenge a discretionary act.

    In Huli, the petitioner, an asylee residing in the United States, filed an asylee-relative

petition on her husband's behalf.  Id. at 268.  As proof of their marriage relationship, Huli

submitted a church-issued marriage certificate.  Id.  The agency notified Huli that the certificate

was insufficient, and requested that she submit a certificate which had been "registered with the

proper civil authorities."  Id.  In response, Huli submitted a civil marriage certificate she received

in New York City from the City Clerk's Office which attested to a civil marriage which occurred *after* Huli obtained asylee status.  Id.  A marriage certificate that attests to a marriage which occurred *after* a petitioner's asylum application is granted does not constitute proof of a qualifying marriage relationship for derivative asylum, and, thus, does not meet the requirements of the regulations.  See 8 C.F.R. § 208.21 ("The relationship of spouse . . . must have existed at the time the principal alien's asylum application was approved.")  Consequently, the agency denied Huli's petition and notified her that her evidence did not establish a qualifying relationship with her husband.  Huli, 393 F. Supp. 2d at 269.

In challenging the agency's decision, Huli did not seek an order compelling the agency to comply with its own regulations—presumably because the agency already had in fact complied with its regulatory obligations.  The agency properly gave Huli an opportunity to prove the required relationship.  See id. at 268; see also 8 C.F.R. §§ 208.21(b) and 204.2(a)(1)-(2).  When it determined that the church certificates were contrary to what the regulations required, the agency gave Huli an opportunity to cure the defect in her application.  See Huli, 393 F. Supp. 2d at 268; see also 8 C.F.R. 103.2(b)(16)(i).  And when the agency determined that the civil certificates failed to satisfy the regulations because they were issued after Huli's asylum application was approved, the agency notified Huli of the inadequacies of the civil marriage certificates.  See Huli, 393 F. Supp. 2d at 269; see also 8 C.F.R. 103.2(b)(16)(i).  Thus, Huli made (and apparently had) no claim that the agency acted in violation of law; she merely wished the agency to exercise its discretion to accept the church certificate that did not satisfy the regulatory requirements.

In stark contrast, here, Ms. Ngassam's complaint alleges that the Agency failed to perform numerous nondiscretionary duties.  (Compl. ¶¶ 3, 65-71, 73-76, 90, 91, 94, 95, 97, 102,

and 105.)  Ms. Ngassam's complaint alleges that the Agency failed to adjudicate her petitions in a timely and diligent fashion: specifically, that the Agency lost her petitions causing them not to be adjudicated for nearly two years.  (Compl. ¶ 42, 43, 56, 59, and 60.)  As noted, Ms. Ngassam's complaint also alleges that after she later cured the deficiency caused by the problematic documents originally submitted with her petition, the agency failed to acknowledge her supplemental evidence—the authentic birth certificates.  (Compl. ¶ 56, 58, 66, and 71.)

Moreover, the Agency's decision denying three of Ms. Ngassam's petitions did not mention the authentic birth certificates or consider Ms. Ngassam's Affidavit explaining her abusive husband's role in obtaining the first set of birth certificates and her lack of knowledge that the documents were not genuine.  (Compl. ¶ 73.)  Thus, the Agency did not provide Plaintiff with the opportunity required by agency regulation to rebut the Agency's determination regarding that evidence.  See 8 C.F.R. § 103.2(b)(16)(i).  To date, the Agency has never examined the authentic birth certificates or notified Plaintiff of any determination regarding those documents.  In sum, Huli is not a bar to Plaintiff's jurisdictional claims because while Huli never alleged violations of nondiscretionary duties, Plaintiff's complaint does.

The instant case also contrasts sharply with the cases relied on by the Huli court.  For example, in Zheng v. McElroy, 1998 WL 702318 (S.D.N.Y. Oct. 7, 1998), the plaintiff submitted new evidence bearing on his eligibility for adjustment of status after the agency had reached a final decision.  Id.  Nevertheless, the agency considered the new evidence and explained why it would not alter its decision.  Id.  Unlike in Zheng, Ms. Ngassam submitted supplemental material evidence—the birth certificates—before a final determination was made on her case.  (Compl. ¶¶ 54-55.)  Further, while the agency in Zheng provided plaintiff with an explanation of why the additional evidence was rejected, in the instant case, the Agency appears

to have never considered the evidence, and has offered no explanation for its refusal to do so. Even if the evidence was considered, the agency has failed to provide a basis for its refusal to credit it. (Compl. ¶ 70.) Consequently, by failing to consider the authentic birth certificates, which must be taken as primary evidence of eligibility for derivative asylum, 8 C.F.R. § 204.2(d)(2)(i), the Agency ignored its legal obligation set forth in the regulations.

Another case cited by the <u>Huli</u> court, <u>Wan Shih Hsieh v. Kiley</u>, 569 F.2d 1179 (2d Cir. 1978), is also clearly distinct from the instant matter. In <u>Wan Shih</u>, the plaintiff sought an order compelling the agency to perform an investigation requested by the United States Consul abroad, which had ceased adjudicating her children's visas at a foreign embassy because of a suspicion that the plaintiff had obtained her own immigration status by fraud. <u>Id.</u> at 1181. The court reasoned that jurisdiction was not proper because the agency, having already completed its review of Wan Shih's application and approved it, did not owe plaintiff any additional duties. <u>Id.</u> at 1182.

Here, Plaintiff does not ask the Court to order the Defendants to perform duties beyond those related to adjudication of asylee-relative petitions. Instead, Plaintiff requests that the Agency merely abide by its own regulations and consider the children's birth certificates.

In short, the Court's reliance on <u>Huli v. Way</u> is misplaced because that decision—and the cases discussed in that decision—do not challenge the Agency's failure to comply with nondiscretionary duties set forth by regulation. Plaintiff's claims are distinct and the Court has jurisdiction over her challenge to nondiscretionary agency acts.

## IV.    COURT ERRED BY DISMISSING PLAINTIFF'S COMPLAINT <u>SUA SPONTE</u> WITHOUT CONSIDERING JURISDICTION UNDER THE APA.

The Court erred by dismissing Ms. Ngassam's complaint based solely on <u>Huli v. Way</u>, 393 F. Supp. 2d 266 (S.D.N.Y. 2005), a case addressed exclusively to the Mandamus Act, 28

16

U.S.C. §1361, but not to the APA.  In contrast to Huli, Plaintiff's complaint includes a claim

under the APA, a cause of action that is separate and distinct from mandamus.   The APA

provides courts with authority to set aside unlawful agency actions based on the agency's failure

to comply with governing law.  Moreover, a "basic presumption of review" exists under the APA

and limitations on jurisdiction are narrowly construed.   Accordingly, in light of the difference

between the APA and mandamus, the Court's failure to consider jurisdiction under the APA

prior to dismissal was improper.

       Under the APA, a person "suffering legal wrong because of agency action, or adversely

affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to

judicial review." 5 U.S.C.A. § 702.  While the APA is not an independent grant of subject matter

jurisdiction, the APA in conjunction with 28 U.S.C.A. § 1331 (federal question jurisdiction)

provides federal district courts with jurisdiction to review agency action.  The Supreme Court

has repeatedly "read the APA as embodying a 'basic presumption of judicial review.'"  See

Lincoln v. Vigil, 508 U.S. 182, 190 (1993) (quoting Abbott Laboratories v. Gardner, 387 U.S.

136, 140 (1967)).   Moreover, although there are limitations on a court's jurisdiction to review

agency action under the APA, those exceptions are exceedingly narrow.

       Section 701(a)(2) of the APA limits judicial review where agency action "is committed to

agency discretion by law."   Id. at 193.   As the Supreme Court has recognized, under 701(a)(2),

the presumption of judicial review under the APA is only overcome where the law "can be taken

to have 'committed' the decisionmaking to the agency's judgment absolutely."  Heckler v.

Chaney, 470 U.S. 821, 830 (1985).  In other words, review is precluded only "[i]n those rare

circumstances where the relevant statute 'is drawn so that a court would have no meaningful

standard against which to judge the agency's exercise of discretion."  Id. (citing Webster v. Doe,

486 U.S. 592, 599-600 (1988)); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402,

410 (1971)).   Here, the presumption of review is not overcome because, as noted above, the

Court has clear standards by which to evaluate the Agency's actions:  the Agency's own

regulations governing eligibility for derivate asylum and the process for adjudicating those

petitions.

  In contrast, the narrow circumstances in which the Supreme Court has held that it lacked

jurisdiction to review agency action do not involve agency failures to abide by controlling law,

but rather, decisions that inherently require agency expertise and judgment.  For example, in

Heckler v. Chaney, 470 U.S. at 830, the Supreme Court held that an agency's decision not to

institute enforcement proceedings was unreviewable under the APA because an agency's

"decision not to enforce often involves a complicated balancing of a number of factors which are

peculiarly within its expertise."  Id. at 832.   Similarly, in Webster v. Doe, the court concluded

that it lacked power to review a decision by the Director of Central Intelligence terminating an

employee in the interests of national security because such judgments occupy an area of

executive action in which courts have long been hesitant to intrude.  486 U.S. at 599-601

(internal citations omitted); see also Franklin v. Massachusetts, 505 U.S. 788, 819 (1992).

(STEVENS, J., concurring in part and concurring in judgment)).

  In this case, the Agency did not have unfettered discretion in the adjudication of

Plaintiff's derivative asylum petitions.   Rather, as detailed above, the Agency was bound by

statute, regulations, and controlling precedent in determining the children's eligibility for

derivative asylum.   If the Agency possessed unfettered discretion to adjudicate derivative

asylum petitions irrespective of applicable law, the eligibility statute provided by Congress and

the Agency's own regulations would be rendered obsolete.

By dismissing the complaint without considering the nature of judicial review under the APA, the Court failed to consider controlling law which reasonably would have altered the result.  See Schonberger v. Serchuk, 742 F.Supp. 108, 119 (S.D.N.Y.1990).  Accordingly, the Court's order should be reconsidered, and the complaint reinstated.

## V.     THE COURT ERRED BY FAILING TO CONSIDER ITS JURISDICTION OVER PLAINTIFF'S CLAIMED DUE PROCESS VIOLATIONS, FOR WHICH THE APA PROVIDES A CAUSE OF ACTION.

Finally, Jurisdiction is proper because the Agency owed Plaintiff a nondiscretionary duty to determine her children's statutory eligibility for immigration status in accordance with due process guarantees.   That obligation is not altered by the fact that the ultimate grant of asylee-relative status is subject to agency discretion.  As the United States Supreme Court has made clear, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear."  Webster, 486 U.S. at 603 (citing Johnson v. Robison, 415 U.S. 361 (1974)).  The Court explained that a "heightened showing" of Congressional intent is necessary because of the "'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim."  Webster, 486 U.S. at 603 (quoting Weinberger v. Salfi, 422 U.S. 749 (1975)).

Here, Congress has not expressed intent to remove due process violations from the ambit of judicial review.  Rather, Congress, in enacting the APA, provided a vehicle for courts to consider such claims.  See 5 U.S.C.A. § 706(2)(B) & (D) (permitting courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity" and "without observance of procedure required by law").  Thus, jurisdiction is proper because Plaintiff has alleged a colorable constitutional claim.

The complaint alleges that the Agency denied Ms. Ngassam due process of law by failing to comply with its own regulations, failing to consider extremely probative evidence in the record—evidence that she is required by regulation to submit, and that the Agency is required by regulation to consider as primary evidence of eligibility—failing to provide her with a determination on the record regarding that material evidence, and by denying her the opportunity to respond to and rebut that determination.  The Supreme Court has noted that an agency's failure to comply with its own regulations regarding an applicant's statutory eligibility for immigration status may amount to a due process violation.  See  United States ex. rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954) (stating that agency must "at least" afford an applicant for immigration relief "that due process required by the regulations in such proceedings" irrespective of the fact that the ultimate grant of relief is discretionary).  Accordingly, by dismissing the complaint without considering jurisdiction over Plaintiff's alleged due process violation, the Court ignored controlling law and reconsideration should be granted.

## **CONCLUSION**

For the foregoing reasons, Ms. Ngassam respectfully requests that this Court reconsider its sua sponte dismissal, reinstate her complaint, and proceed to consider her Order to Show Cause for Preliminary Injunction on the merits.

Respectfully Submitted,


_____/s/_____

Bryan Lonegan, Esq. [BL 5985]
Jenny-Brooke Condon, Esq. [JC 7636]
Jisun Change (law student intern)
Gal Davidovitch (law student intern)
Center for Social Justice
Seton Hall Law School
833 McCarter Highway
Newark, New Jersey 07102

*Attorneys for Plaintiff*
Rose Ngassam

Dated:   October 3, 2007