Rose Ngassam,

                    Petitioner

    - against -

MICHAEL CHERTOFF, Secretary, Department of
Homeland Security; EMILIO T. GONZALEZ,
Director, United States Citizenship and
Immigration Services; and GERARD
HEINAUER, Director, United States Citizenship
and Immigration Services Nebraska Service
Center

                    Respondents.

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
NEW YORK**

Civ. No. 07 Civ. 8172 (LLS)

**AFFIDAVIT OF JENNY-BROOKE
CONDON, ESQ. IN SUPPORT OF
ORDER TO SHOW CAUSE FOR
PRELIMINARY INJUNCTION**

I, **Jenny-Brooke Condon**, state as follows:

1.  I am an attorney-at-law in the State of New York and New Jersey and a Visiting Professor at
    the Seton Hall Law School, Center for Social Justice, Immigration and Human Rights Clinic
    [hereinafter "the clinic"], attorneys for Petitioner Rose Ngassam in the above-captioned
    matter.  I submit this affidavit pursuant to Fed. Rule of Civ. Proc. 65 (a), in support of my
    client's Motion for an Order to Show Cause why an order should not be issued compelling
    the above-named Respondents to immediately grant the Asylee Relative Petitions submitted
    by Ms. Ngassam on behalf of her children.

2.  I first represented Ms. Ngassam in 2003, and helped her obtain asylum.  Shortly thereafter,
    the clinic filed seven I-730 petitions for Ms. Ngassam on behalf of her seven children.

3.  In 2005, I started representing Ms. Ngassam again on behalf of the clinic, where I work as a clinical teacher and attorney supervising third-year law students. I have been working for the last two years to bring Ms. Ngassam's children to safety as asylee-relatives.

4.  Since Ms. Ngassam was granted asylum in 2003, the United States Citizenship and Immigration Services ("USCIS") has arbitrarily and capriciously denied her the right to reunite with her children, in violation of the Administrative Procedure Act, the Immigration and Nationality Act, and Ms. Ngassam's due process rights under the United States Constitution.

5.  I submit this Affidavit detailing the procedural history of this case, which has been fraught by arbitrary delay and disregard for Ms. Ngassam's rights, to demonstrate that pursuing relief in the ordinary course is unlikely to afford Plaintiff adequate justice. Specifically, several instances of unnecessary delay and bureaucratic mistakes by USCIS have prolonged Ms. Ngassam's separation from her family and warrant expeditious review from this Court.

6.  As explained in more detail below, USCIS initially lost Ms. Ngassam's petitions after she filed them with the agency, resulting in a nearly two-year delay. Then, after her petitions were approved, the U.S. embassy in Cameroon informed Ms. Ngassam that her petitions might be revoked because of concerns with the documentation submitted in support of her petitions. Rather than addressing the matter expeditiously based on rebuttal evidence submitted by Ms. Ngassam, USCIS did not take any action for seven months, further delaying resolution of Ms. Ngassam's case. USCIS failed to communicate with the embassy about Ms. Ngassam's case in spite of repeated correspondence from the clinic apprising USCIS of the problem and Ms. Ngassam's efforts to rectify it.

7.  In addition, USCIS rejected and erroneously returned material, supplemental evidence filed by Ms. Ngassam to resolve discrepancies in her case, further delaying reunification with her children.  Finally, USCIS denied three of Ms. Ngassam's asylee-relative petitions in spite of conclusive DNA evidence proving that the children are biologically her own and without considering primary evidence of her children's eligibility for derivative asylee status.

### Initial Arbitrary Delay

8.  The initial delay in Ms. Ngassam's case began in September 2003 when the agency transferred Plaintiff's I-730 petitions between a variety of offices and service centers in Nebraska, New Jersey, and Missouri without processing them.

9.  The agency first transferred the petitions from the Nebraska Service Center—where these petitions are normally filed—to the Newark Asylum Office under a short-lived, now-defunct pilot program that only served to prolong Ms. Ngassam's reunification with her children. See Exhibit 6, Letter from Plaintiff's Counsel, April 4, 2005.

10. After several attempts to determine the status of Ms. Ngassam's petitions, in April 2005, our office contacted the Director of the Newark Asylum Office, who later determined that the files were in the custody of the National Records Center.

11. Ultimately the I-730 petitions were transferred back to the Nebraska Service Center, which subsequently approved six petitions on May 12, 2005 and the final one on September 22, 2005, nearly two years after Ms. Ngassam filed them. See Exhibit 7, I-797 Notice of Approvals.

12. Several of Ms. Ngassam's children then appeared for visa interviews at the U.S. Embassy in Yaonde, Cameroon in August. 2005.

13. The clinic then learned from Ms. Ngassam in November 2005 that the embassy discovered a problem with the birth certificates submitted in support of her I-730 petitions. The clinic immediately contacted the U.S. embassy in Cameroon to investigate further.

**The Agency Fails to Communicate with the Embassy and Timely Respond to Correspondence from Counsel, Delaying Reunification for another Seven Months**

14. An embassy official, Pauline Borderies, then explained via email that because the birth certificates submitted in support of Ms. Ngassam's case appeared to be fraudulent, on November 18, 2005, the embassy returned the I-730 files to USCIS's Nebraska Service Center with a recommendation that the approved petitions be revoked. See Exhibit 8, Email from Pauline N. Borderies, U.S. Embassy in Cameroon, Nov. 18, 2005.

15. That information regarding the timing later proved to be false. The embassy actually did not return the files to USCIS until seven months later in June 2006. See Exhibit 9, USCIS Electronic Case Status Information.

16. After Ms. Ngassam learned from her family in Cameroon that her abusive spouse provided the birth certificates now deemed suspect by the embassy, I immediately wrote to USCIS and informed the agency that Ms. Ngassam had reason to doubt the reliability of those documents and was working to obtain official copies of the birth certificates.

17. Concerned that the agency might take action quickly without providing Ms. Ngassam with adequate time to cure the documents, I suggested that Ms. Ngassam was withdrawing reliance on the copies provided by her husband and the agency should expect a supplemental submission of the corrected birth certificates.

18. Ms. Ngassam then instructed her family in Cameroon to obtain certified duplicates of her children's birth certificates from the proper authorities in Cameroon. Ms. Ngassam detailed her and her family's efforts to obtain the certified duplicates and the chain of custody relating

4

to those documents in a supplemental affidavit submitted to the agency. See Exhibit 10, Supplemental Affidavit of Rose Ngassam Submitted to USCIS for the first time on February 1, 2006.

19. As soon as I received the certified duplicates of the children's birth certificates and took steps to verify their reliability, my office submitted those documents to USCIS. See Exhibit 12, Letter from Susan Hallander & Lori Nessel, Esq., Feb. 1, 2006.

20. In a cover letter submitted with that supplemental submission, the clinic noted that the submission contained: "newly obtained documentation verifying the relationship between Ms. Ngassam and her children: certified duplicates of the children's official birth certificates," and attached the official duplicates as exhibits.

21. Ms. Ngassam's supplemental affidavit also explained how her abusive husband in Cameroon, whose abuse formed part of her asylum claim, was apparently responsible for the first illegitimate documents. See Exhibit 10, Supplemental Affidavit of Rose Ngassam Feb. 1, 2006.

22. USCIS did not timely acknowledge receipt of that submission. Accordingly, one month later on March 1, 2006, the clinic sent a written request to USCIS seeking an update and acknowledgment of receipt. See Exhibit 13, Letter from Susan Hallander, Legal Intern, March 2, 2006.

23. That letter again enumerated the supplemental evidence submitted in support of Ms. Ngassam's petition, and noted "We have not yet received a receipt notice acknowledging that your office received this documentation." USCIS did not respond.

24. Approximately three months after filing the supplemental documentation, on April 25, 2006, the clinic submitted a second written request seeking an update on the case with the subject

line: "URGENT REQUEST for Update/Confirmation that additional documents have been received and processed." See Exhibit 14, Letter from Susan Hallander, Legal Intern, April 25, 2006.

25. That letter again enumerated the supplemental evidence submitted in Ms. Ngassam's case.

26. The clinic included an Express Mail receipt indicating that USCIS had received the February 1, 2006 submission containing the birth certificates. The clinic noted that it had received conflicting information about whether the files had been returned to the NSC for processing. The embassy had notified the clinic in November 2005 that the files were returned to the NSC, but in a later email sent on February 2, 2006 stated that the file would be returned to the U.S. by the end of the month.

27. The clinic noted its serious concern that Ms. Ngassam's case was not being addressed and requested "assurance that the new documentation has not been lost, that is has been incorporated into her file, and that it is being processed."

### The Agency Arbitrarily Returns Material Supplemental Evidence to Counsel Without Explanation

28. On May 2, 2006, USCIS returned the entire February 1, 2006 supplemental submission of birth certificates and Ms. Ngassam's affidavit to the clinic. In a cursory cover letter, Gregory W. Christian, Acting Director of NSC stated that "NSC approved these petitions on 5/12/05 and has not received them back from the embassy." See Exhibit 15.

29. NSC apparently did not take any steps to confer with the embassy about the case or determine the relevance of Ms. Ngassam's supplemental evidence. Instead, USCIS noted "You will need to get a letter from the embassy stating when they sent these petitions back to NSC so the records can be checked further."

30. The following month, the clinic received confirmation that USCIS had received and was reviewing the petitions. <u>See</u> Exhibit 17, Electronic Case Status Update, June 6, 2006.

31. At that time, the clinic immediately resubmitted the supplemental evidence in support of Ms. Ngassam's case to USCIS, including the official certified duplicates of the birth certificates and Ms. Ngassam's affidavit. <u>See</u> Exhibit 18, Letter from Jenny-Brooke Condon, Esq., June 12, 2006. The clinic noted in a cover letter that although USCIS "recently returned these materials" to counsel's office, "[t]he enclosed documents are highly relevant to Ms. Ngassam's right to reunite with her children. We are, therefore, resubmitting them and requesting your attention to this urgent matter." <u>Id.</u>

32. At this point, the clinic was seriously concerned that USCIS had disregarded the supplemental primary evidence submitted in support of Ms. Ngassam's petition, and was unresponsive to counsel's inquiries. As a result, the clinic resolved to supplement the record further with DNA evidence to expedite reunification.

33. In the summer of 2006, the clinic raised money through private donations to secure DNA testing for four of Ms. Ngassam's children, including the three son's whose petitions were returned to USCIS. The clinic planned to complete DNA testing for the other children as soon as feasible.

34. The clinic also contacted the American Immigration Lawyer's Association, who has a liaison with access to NSC officials.

35. Through that liaison, the clinic requested that NSC assign a supervisor to Ms. Ngassam's case to expedite processing and ensure that any additional concerns could be promptly addressed.

36. A NSC supervisor never contacted the clinic or advised our office of its concerns. The only information regarding the government's concern with the case was provided by the embassy, which suggested that the identity of the children and their relationship with Ms. Ngassam was in question because the initially submitted birth certificates were subsequently deemed fraudulent.

37. NSC never advised Ms. Ngassam that the certified duplicates of her children's birth certificates were insufficient to resolve the embassy's concerns or that other issues, such as the age of the children, needed to be addressed through evidence other than the certified duplicates of the birth certificates.

38. In October 2006, the clinic received the DNA test results proving unequivocally that Ms. Ngassam is the biological mother of her children.  Immediately, the clinic submitted a copy of the DNA test results to USCIS.  See Exhibit 19, Letter from Legal Interns Jeremy Farrell and Lyndsay Speece, October 25, 2006.  That letter again referenced the previously submitted supplemental documentation submitted in February 2006, and noted that, to date, counsel had not received any information regarding USCIS's review of the case.

**A Visa Is Arbitrarily Issued to One Child with Positive DNA Tests Results, While the Other Similarly Situated Children Are Left Behind**

39. The letter also noted that the test results were forwarded to the U.S. embassy in Cameroon.

40. After the DNA results were submitted to the embassy, one of Ms. Ngassam's children, Kamwa Achille Martial, received a VISA and subsequently reunited with his mother in the United States.  For reasons that are unclear, the other three children with completed DNA test results were left behind.

41. The clinic learned by electronic notification in January 2007, that USCIS reopened three of Ms. Ngassam's petitions for reconsideration.   Counsel immediately wrote to USCIS and

submitted a sealed copy of the DNA tests results.  See Exhibit 20, Letter from Legal Interns Lauren Yassine and Philippe Dehaene, February 5, 2007.  Counsel did not rely solely on the DNA test results as evidence that the petitions should be approved; significantly, counsel again referenced the supplemental documentation—specifically the certified duplicates of the birth certificates and Ms. Ngassam's affidavit—that the clinic had submitted, and then resubmitted, to USCIS the previous year.  Id.

42. USCIS then issued an Intent to Deny the three subject petitions, dated January 26, 2007.  See Exhibit 21, Notice of Intent to Deny.  The Intent to Deny in no way suggested that the birth certificates were insufficient to address evidence of the children-beneficiaries' age.  It only stated "The consulate in Yaonde, Cameroon returned your petition to the Service, indicating that the documentation submitted in support of the petition was fraudulent.  The claimed relationship does not appear to exist."  Id.

43. The Intent to Deny also included a memo from Pauline N. Borderies, Vice Consul of the U.S. Embassy in Cameroon, addressed to USCIS Nebraska Service Center and dated March 9, 2006.  That memo noted that during the visa interviews for the three children whose petitions were subsequently denied, the embassy determined that the documents submitted by the children "were not definitive enough to establish a bona-fide relationship with the petitioner" and that "the birth certificates submitted by the beneficiaries are not genuine."  Id.  Although the embassy memo mentioned that the birth certificates were initially investigated by the embassy because the children appeared to be older than the age claimed in the petitions, the focus of the embassy memo was the inadequacy of the birth certificates to establish the identity of Ms. Ngassam's children, and, as a result, their eligibility for asylee-relative status.

44. In response to the Intent to Deny, the clinic submitted a written response to reiterate the new evidence submitted in support of Ms. Ngassam's petition. See Exhibit 22, Letter from Legal Interns Lauren Yassine and Philippe Dehaene, February 16, 2007.   Counsel again described how Ms. Ngassam was not aware at the time her petitions were filed that the first set of birth certificates were not legitimate, and explained how those birth certificates originated from her former abusive spouse. Id.  Counsel's response also noted that Ms. Ngassam's Affidavit explained her efforts "upon learning of the problem," to "subsequently obtain[] duplicates of her children's official birth certificates from Cameroon, and provide[] them to the embassy and USCIS." The letter made clear that Ms. Ngassam provided DNA evidence, in addition to the certified duplicate copies of the birth certificates, to eliminate any chance that USCIS would still have concerns about her relationship with the children. Id.

45. Counsel also asked the DNA testing service to send a sealed official copy of the DNA test results directly to USCIS, which it did.

**USCIS Issues a Decision that Ignores Material Evidence
In the Record**

46. On May 7, 2007, Ms. Ngassam received USCIS's denial of the three reopened I-730 petitions. See Exhibit 23, Decisions, dated April 30, 2007.  The Decision stated that that evidence included: "DNA testing results between yourself and the beneficiary, a copy of a photo of yourself, consent forms for you and your claimed beneficiaries through the DNA testing facility, a poor photocopy of your New York state drivers license, copies of handwritten passport pages of the beneficiary(s), specimen log-in-sheets from the DNA testing facility, and finally copies of approved I-797 Approval Notices for previously filed I-730 petitions filed by you." Exhibit 23, at 1.

10

47. The Decision failed to acknowledge the Affidavit and official certified copies of the birth certificates that Ms. Ngassam submitted to USCIS twice, and had relied on and highlighted as evidence in support of her petition in roughly eight separate communications with USCIS regarding this case.

48. Thus, the accompanying explanation in the Decision was inconsistent with the evidence submitted.  The notice of Intent to Deny relied solely on the documentation first submitted with the petition, which Ms. Ngassam acknowledged should not be considered.

49. In spite of Ms. Ngassam and counsel's repeated attempts to urge the Service to consider the certified duplicates of the children's birth certificates filed by Ms. Ngassam in a supplemental submission, NSC wholly ignored this evidence and did not discuss its significance in the decision at all.  The agency acknowledged that Ms. Ngassam is the biological mother of the children based on the DNA evidence, Exhibit 23, at 1, (acknowledging DNA as "proof of your biological parentage of the children"), but relying solely on the first set of birth certificates concluded: "The consular officials, then, were unable to confirm that the beneficiaries named in this approved petition even existed.  In addition, the age and marital status of the claimed beneficiary has not been established, and you have not proven that the beneficiary is eligible for the benefit sought."  Id.

50. The agency's repeated delays in this case and failure to consider Ms. Ngassam's supplemental evidence constitute arbitrary and capricious agency action that warrants an expeditious remedy from this Court.

**Emergent Relief is Necessary Because Ms. Ngassam Has Exhausted All Other Opportunities for Expeditious Resolution of Her Case**

51. Given that the immigration regulations do not provide for an appeal in I-730 cases, during the last several months since Ms. Ngassam's petitions were denied, the clinic has explored several advocacy options to try to resolve Ms. Ngassam's case expeditiously without resort to this Complaint. Since receiving the decision, the clinic has filed a motion to reconsider, which was rejected by the agency. It then sought the help of and met with representatives of several of Ms. Ngassam's elected officials, including the Bronx City Speaker Christine Quinn, Congressman Jose Serrano, and Senator Charles Schumer in hopes that those offices might convince the agency to revisit its decision.

52. In light of the clinic's unsuccessful attempts to advocate repeatedly through USCIS, a liaison from the American Immigration Lawyer's Association with access to USCIS officials, and her elected representatives, there is reason to doubt USCIS's willingness and capacity to rectify the errors made in Ms. Ngassam's case within a reasonable time.

53. Ms. Ngassam now files the instant motion in an attempt to rectify the service's arbitrary and unreasonable decision that is contrary to the weight of the evidence and due process of law.

54. In light of the ongoing severe injury she has suffered on account of the agency's history of unreasonable delay, Ms. Ngassam seeks preliminary injunctive relief from this Court.

55. Attached to my certification are 26 exhibits relied on by Plaintiff in her Complaint and in her Order to Show Cause for Preliminary Injunction. I certify that the attached exhibits are true and accurate copies of all documents, correspondences, and instruments.

56. I certify that all of the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


By: _____

                                                                        Jenny-Brooke Condon, Esq.


DATED:  September 18, 2007