# EXHIBIT 4

Rose Ngassam,

                    Plaintiff

   - against -

MICHAEL CHERTOFF, Secretary, Department of
Homeland Security; EMILIO T. GONZALEZ,
Director, United States Citizenship and
Immigration Services; and GERARD
HEINAUER, Director, United States Citizenship
and Immigration Services Nebraska Service
Center

               Defendants.

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
NEW YORK**

Civ. No. ___

**AFFIDAVIT OF JENNY-BROOKE
CONDON, ESQ. IN SUPPORT OF
ORDER TO SHOW CAUSE FOR
PRELIMINARY INJUNCTION**

    I, **Jenny-Brooke Condon**, state as follows:

1.  I am an attorney-at-law in the State of New York and New Jersey and a Visiting Professor at

    the Seton Hall Law School, Center for Social Justice, Immigration and Human Rights Clinic

    [hereinafter "the clinic"], attorneys for Petitioner Rose Ngassam in the above-captioned

    matter.  I submit this affidavit pursuant to Fed. Rule of Civ. Proc. 65 (a), in support of my

    client's Motion for an Order to Show Cause why an order should not be issued compelling

    the above-named Respondents to immediately grant the Asylee Relative Petitions submitted

    by Ms. Ngassam on behalf of her children.

2.  I first represented Ms. Ngassam in 2003, and helped her obtain asylum.  Shortly thereafter,

    the clinic filed seven I-730 petitions for Ms. Ngassam on behalf of her seven children.

3. In 2005, I started representing Ms. Ngassam again on behalf of the clinic, where I work as a clinical teacher and attorney supervising third-year law students. I have been working for the last two years to bring Ms. Ngassam's children to safety as asylee-relatives.

4. Since Ms. Ngassam was granted asylum in 2003, the United States Citizenship and Immigration Services ("USCIS") has arbitrarily and capriciously denied her the right to reunite with her children, in violation of the Administrative Procedure Act, the Immigration and Nationality Act, and Ms. Ngassam's due process rights under the United States Constitution.

5. I submit this Affidavit detailing the procedural history of this case, which has been fraught by arbitrary delay and disregard for Ms. Ngassam's rights, to demonstrate that pursuing relief in the ordinary course is unlikely to afford Plaintiff adequate justice. Specifically, several instances of unnecessary delay and bureaucratic mistakes by USCIS have prolonged Ms. Ngassam's separation from her family and warrant expeditious review from this Court.

6. As explained in more detail below, USCIS initially lost Ms. Ngassam's petitions after she filed them with the agency, resulting in a nearly two-year delay. Then, after her petitions were approved, the U.S. embassy in Cameroon informed Ms. Ngassam that her petitions might be revoked because of concerns with the documentation submitted in support of her petitions. Rather than addressing the matter expeditiously based on rebuttal evidence submitted by Ms. Ngassam, USCIS did not take any action for seven months, further delaying resolution of Ms. Ngassam's case. USCIS failed to communicate with the embassy about Ms. Ngassam's case in spite of repeated correspondence from the clinic apprising USCIS of the problem and Ms. Ngassam's efforts to rectify it.

7.  In addition, USCIS rejected and erroneously returned material, supplemental evidence filed by Ms. Ngassam to resolve discrepancies in her case, further delaying reunification with her children.  Finally, USCIS denied three of Ms. Ngassam's asylee-relative petitions in spite of conclusive DNA evidence proving that the children are biologically her own and without considering primary evidence of her children's eligibility for derivative asylee status.

### Initial Arbitrary Delay

8.  The initial delay in Ms. Ngassam's case began in September 2003 when the agency transferred Plaintiff's I-730 petitions between a variety of offices and service centers in Nebraska, New Jersey, and Missouri without processing them.

9.  The agency first transferred the petitions from the Nebraska Service Center—where these petitions are normally filed—to the Newark Asylum Office under a short-lived, now-defunct pilot program that only served to prolong Ms. Ngassam's reunification with her children. See Exhibit 6, Letter from Plaintiff's Counsel, April 4, 2005.

10. After several attempts to determine the status of Ms. Ngassam's petitions, in April 2005, our office contacted the Director of the Newark Asylum Office, who later determined that the files were in the custody of the National Records Center.

11. Ultimately the I-730 petitions were transferred back to the Nebraska Service Center, which subsequently approved six petitions on May 12, 2005 and the final one on September 22, 2005, nearly two years after Ms. Ngassam filed them. See Exhibit 7, I-797 Notice of Approvals.

12. Several of Ms. Ngassam's children then appeared for visa interviews at the U.S. Embassy in Yaonde, Cameroon in August. 2005.

13. The clinic then learned from Ms. Ngassam in November 2005 that the embassy discovered a problem with the birth certificates submitted in support of her I-730 petitions. The clinic immediately contacted the U.S. embassy in Cameroon to investigate further.

### The Agency Fails to Communicate with the Embassy and Timely Respond to Correspondence from Counsel, Delaying Reunification for another Seven Months

14. An embassy official, Pauline Borderies, then explained via email that because the birth certificates submitted in support of Ms. Ngassam's case appeared to be fraudulent, on November 18, 2005, the embassy returned the I-730 files to USCIS's Nebraska Service Center with a recommendation that the approved petitions be revoked. See Exhibit 8, Email from Pauline N. Borderies, U.S. Embassy in Cameroon, Nov. 18, 2005.

15. That information regarding the timing later proved to be false. The embassy actually did not return the files to USCIS until seven months later in June 2006. See Exhibit 9, USCIS Electronic Case Status Information.

16. After Ms. Ngassam learned from her family in Cameroon that her abusive spouse provided the birth certificates now deemed suspect by the embassy, I immediately wrote to USCIS and informed the agency that Ms. Ngassam had reason to doubt the reliability of those documents and was working to obtain official copies of the birth certificates.

17. Concerned that the agency might take action quickly without providing Ms. Ngassam with adequate time to cure the documents, I suggested that Ms. Ngassam was withdrawing reliance on the copies provided by her husband and the agency should expect a supplemental submission of the corrected birth certificates.

18. Ms. Ngassam then instructed her family in Cameroon to obtain certified duplicates of her children's birth certificates from the proper authorities in Cameroon. Ms. Ngassam detailed her and her family's efforts to obtain the certified duplicates and the chain of custody relating

4

to those documents in a supplemental affidavit submitted to the agency. See Exhibit 10, Supplemental Affidavit of Rose Ngassam Submitted to USCIS for the first time on February 1, 2006.

19. As soon as I received the certified duplicates of the children's birth certificates and took steps to verify their reliability, my office submitted those documents to USCIS. See Exhibit 12, Letter from Susan Hallander & Lori Nessel, Esq., Feb. 1, 2006.

20. In a cover letter submitted with that supplemental submission, the clinic noted that the submission contained: "newly obtained documentation verifying the relationship between Ms. Ngassam and her children: certified duplicates of the children's official birth certificates," and attached the official duplicates as exhibits.

21. Ms. Ngassam's supplemental affidavit also explained how her abusive husband in Cameroon, whose abuse formed part of her asylum claim, was apparently responsible for the first illegitimate documents. See Exhibit 10, Supplemental Affidavit of Rose Ngassam Feb. 1, 2006.

22. USCIS did not timely acknowledge receipt of that submission. Accordingly, one month later on March 1, 2006, the clinic sent a written request to USCIS seeking an update and acknowledgment of receipt. See Exhibit 13, Letter from Susan Hallander, Legal Intern, March 2, 2006.

23. That letter again enumerated the supplemental evidence submitted in support of Ms. Ngassam's petition, and noted "We have not yet received a receipt notice acknowledging that your office received this documentation." USCIS did not respond.

24. Approximately three months after filing the supplemental documentation, on April 25, 2006, the clinic submitted a second written request seeking an update on the case with the subject

line: "URGENT REQUEST for Update/Confirmation that additional documents have been received and processed." <u>See</u> Exhibit 14, Letter from Susan Hallander, Legal Intern, April 25, 2006.

25. That letter again enumerated the supplemental evidence submitted in Ms. Ngassam's case.

26. The clinic included an Express Mail receipt indicating that USCIS had received the February 1, 2006 submission containing the birth certificates. The clinic noted that it had received conflicting information about whether the files had been returned to the NSC for processing. The embassy had notified the clinic in November 2005 that the files were returned to the NSC, but in a later email sent on February 2, 2006 stated that the file would be returned to the U.S. by the end of the month.

27. The clinic noted its serious concern that Ms. Ngassam's case was not being addressed and requested "assurance that the new documentation has not been lost, that is has been incorporated into her file, and that it is being processed."

### The Agency Arbitrarily Returns Material Supplemental Evidence to Counsel Without Explanation

28. On May 2, 2006, USCIS returned the entire February 1, 2006 supplemental submission of birth certificates and Ms. Ngassam's affidavit to the clinic. In a cursory cover letter, Gregory W. Christian, Acting Director of NSC stated that "NSC approved these petitions on 5/12/05 and has not received them back from the embassy." <u>See</u> Exhibit 15.

29. NSC apparently did not take any steps to confer with the embassy about the case or determine the relevance of Ms. Ngassam's supplemental evidence. Instead, USCIS noted "You will need to get a letter from the embassy stating when they sent these petitions back to NSC so the records can be checked further."

30. The following month, the clinic received confirmation that USCIS had received and was reviewing the petitions. See Exhibit 17, Electronic Case Status Update, June 6, 2006.

31. At that time, the clinic immediately resubmitted the supplemental evidence in support of Ms. Ngassam's case to USCIS, including the official certified duplicates of the birth certificates and Ms. Ngassam's affidavit. See Exhibit 18, Letter from Jenny-Brooke Condon, Esq., June 12, 2006. The clinic noted in a cover letter that although USCIS "recently returned these materials" to counsel's office, "[t]he enclosed documents are highly relevant to Ms. Ngassam's right to reunite with her children. We are, therefore, resubmitting them and requesting your attention to this urgent matter." Id.

32. At this point, the clinic was seriously concerned that USCIS had disregarded the supplemental primary evidence submitted in support of Ms. Ngassam's petition, and was unresponsive to counsel's inquiries. As a result, the clinic resolved to supplement the record further with DNA evidence to expedite reunification.

33. In the summer of 2006, the clinic raised money through private donations to secure DNA testing for four of Ms. Ngassam's children, including the three son's whose petitions were returned to USCIS. The clinic planned to complete DNA testing for the other children as soon as feasible.

34. The clinic also contacted the American Immigration Lawyer's Association, who has a liaison with access to NSC officials.

35. Through that liaison, the clinic requested that NSC assign a supervisor to Ms. Ngassam's case to expedite processing and ensure that any additional concerns could be promptly addressed.

36. A NSC supervisor never contacted the clinic or advised our office of its concerns. The only information regarding the government's concern with the case was provided by the embassy, which suggested that the identity of the children and their relationship with Ms. Ngassam was in question because the initially submitted birth certificates were subsequently deemed fraudulent.

37. NSC never advised Ms. Ngassam that the certified duplicates of her children's birth certificates were insufficient to resolve the embassy's concerns or that other issues, such as the age of the children, needed to be addressed through evidence other than the certified duplicates of the birth certificates.

38. In October 2006, the clinic received the DNA test results proving unequivocally that Ms. Ngassam is the biological mother of her children.  Immediately, the clinic submitted a copy of the DNA test results to USCIS.  See Exhibit 19, Letter from Legal Interns Jeremy Farrell and Lyndsay Speece, October 25, 2006.  That letter again referenced the previously submitted supplemental documentation submitted in February 2006, and noted that, to date, counsel had not received any information regarding USCIS's review of the case.

**A Visa Is Arbitrarily Issued to One Child with Positive DNA Tests Results, While the Other Similarly Situated Children Are Left Behind**

39. The letter also noted that the test results were forwarded to the U.S. embassy in Cameroon.

40. After the DNA results were submitted to the embassy, one of Ms. Ngassam's children, Kamwa Achille Martial, received a VISA and subsequently reunited with his mother in the United States.  For reasons that are unclear, the other three children with completed DNA test results were left behind.

41. The clinic learned by electronic notification in January 2007, that USCIS reopened three of Ms. Ngassam's petitions for reconsideration.   Counsel immediately wrote to USCIS and

submitted a sealed copy of the DNA tests results.  See Exhibit 20, Letter from Legal Interns

Lauren Yassine and Philippe Dehaene, February 5, 2007.  Counsel did not rely solely on the

DNA test results as evidence that the petitions should be approved; significantly, counsel

again referenced the supplemental documentation—specifically the certified duplicates of the

birth certificates and Ms. Ngassam's affidavit—that the clinic had submitted, and then

resubmitted, to USCIS the previous year.  Id.

42. USCIS then issued an Intent to Deny the three subject petitions, dated January 26, 2007.  See

Exhibit 21, Notice of Intent to Deny.  The Intent to Deny in no way suggested that the birth

certificates were insufficient to address evidence of the children-beneficiaries' age.  It only

stated "The consulate in Yaonde, Cameroon returned your petition to the Service, indicating

that the documentation submitted in support of the petition was fraudulent.  The claimed

relationship does not appear to exist."  Id.

43. The Intent to Deny also included a memo from Pauline N. Borderies, Vice Consul of the U.S.

Embassy in Cameroon, addressed to USCIS Nebraska Service Center and dated March 9,

2006.  That memo noted that during the visa interviews for the three children whose petitions

were subsequently denied, the embassy determined that the documents submitted by the

children "were not definitive enough to establish a bona-fide relationship with the petitioner"

and that "the birth certificates submitted by the beneficiaries are not genuine." Id.  Although

the embassy memo mentioned that the birth certificates were initially investigated by the

embassy because the children appeared to be older than the age claimed in the petitions, the

focus of the embassy memo was the inadequacy of the birth certificates to establish the

identity of Ms. Ngassam's children, and, as a result, their eligibility for asylee-relative status.

44. In response to the Intent to Deny, the clinic submitted a written response to reiterate the new evidence submitted in support of Ms. Ngassam's petition. See Exhibit 22, Letter from Legal Interns Lauren Yassine and Philippe Dehaene, February 16, 2007.   Counsel again described how Ms. Ngassam was not aware at the time her petitions were filed that the first set of birth certificates were not legitimate, and explained how those birth certificates originated from her former abusive spouse. Id.  Counsel's response also noted that Ms. Ngassam's Affidavit explained her efforts "upon learning of the problem," to "subsequently obtain[] duplicates of her children's official birth certificates from Cameroon, and provide[] them to the embassy and USCIS." The letter made clear that Ms. Ngassam provided DNA evidence, in addition to the certified duplicate copies of the birth certificates, to eliminate any chance that USCIS would still have concerns about her relationship with the children. Id.

45. Counsel also asked the DNA testing service to send a sealed official copy of the DNA test results directly to USCIS, which it did.

### USCIS Issues a Decision that Ignores Material Evidence
### In the Record

46. On May 7, 2007, Ms. Ngassam received USCIS's denial of the three reopened I-730 petitions. See Exhibit 23, Decisions, dated April 30, 2007. The Decision stated that that evidence included: "DNA testing results between yourself and the beneficiary, a copy of a photo of yourself, consent forms for you and your claimed beneficiaries through the DNA testing facility, a poor photocopy of your New York state drivers license, copies of handwritten passport pages of the beneficiary(s), specimen log-in-sheets from the DNA testing facility, and finally copies of approved I-797 Approval Notices for previously filed I-730 petitions filed by you." Exhibit 23, at 1.

47. The Decision failed to acknowledge the Affidavit and official certified copies of the birth certificates that Ms. Ngassam submitted to USCIS twice, and had relied on and highlighted as evidence in support of her petition in roughly eight separate communications with USCIS regarding this case.

48. Thus, the accompanying explanation in the Decision was inconsistent with the evidence submitted. The notice of Intent to Deny relied solely on the documentation first submitted with the petition, which Ms. Ngassam acknowledged should not be considered.

49. In spite of Ms. Ngassam and counsel's repeated attempts to urge the Service to consider the certified duplicates of the children's birth certificates filed by Ms. Ngassam in a supplemental submission, NSC wholly ignored this evidence and did not discuss its significance in the decision at all. The agency acknowledged that Ms. Ngassam is the biological mother of the children based on the DNA evidence, Exhibit 23, at 1, (acknowledging DNA as "proof of your biological parentage of the children"), but relying solely on the first set of birth certificates concluded: "The consular officials, then, were unable to confirm that the beneficiaries named in this approved petition even existed. In addition, the age and marital status of the claimed beneficiary has not been established, and you have not proven that the beneficiary is eligible for the benefit sought." Id.

50. The agency's repeated delays in this case and failure to consider Ms. Ngassam's supplemental evidence constitute arbitrary and capricious agency action that warrants an expeditious remedy from this Court.

**Emergent Relief is Necessary Because Ms. Ngassam Has Exhausted All Other Opportunities for Expeditious Resolution of Her Case**

51. Given that the immigration regulations do not provide for an appeal in I-730 cases, during the last several months since Ms. Ngassam's petitions were denied, the clinic has explored several advocacy options to try to resolve Ms. Ngassam's case expeditiously without resort to this Complaint. Since receiving the decision, the clinic has filed a motion to reconsider, which was rejected by the agency. It then sought the help of and met with representatives of several of Ms. Ngassam's elected officials, including the Bronx City Speaker Christine Quinn, Congressman Jose Serrano, and Senator Charles Schumer in hopes that those offices might convince the agency to revisit its decision.

52. In light of the clinic's unsuccessful attempts to advocate repeatedly through USCIS, a liaison from the American Immigration Lawyer's Association with access to USCIS officials, and her elected representatives, there is reason to doubt USCIS's willingness and capacity to rectify the errors made in Ms. Ngassam's case within a reasonable time.

53. Ms. Ngassam now files the instant motion in an attempt to rectify the service's arbitrary and unreasonable decision that is contrary to the weight of the evidence and due process of law.

54. In light of the ongoing severe injury she has suffered on account of the agency's history of unreasonable delay, Ms. Ngassam seeks preliminary injunctive relief from this Court.

55. Attached to my certification are 26 exhibits relied on by Plaintiff in her Complaint and in her Order to Show Cause for Preliminary Injunction. I certify that the attached exhibits are true and accurate copies of all documents, correspondences, and instruments.

56. I certify that all of the foregoing statements made by me are true. I am aware that if any of

the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____

Jenny-Brooke Condon, Esq.

DATED: September 18, 2007

13

# EXHIBIT 5

**In the matter of Rose Ngassam**

**Psychological Evaluation**

Client: Rose Ngassam                                    D.O.B.: 1/25/62

Credentials of Evaluator:

1.  I am an American social worker, and licensed in the states of New Jersey and New York.  I am a graduate of Columbia University Schools of Social Work and Public Health, and completed Masters degrees in both social work and public health.  I am currently Director of the Cross-Cultural Counseling Program at the International Institute of New Jersey (IINJ), a mental health program serving refugees and survivors of torture.  I am also an adjunct professor of social work at New York University, where I teach a course in clinical practice with immigrants and refugees.

2.  From 1995 through 1999, I worked at Victim Services (now called Safe Horizon), focusing on the needs of women and children involved in domestic violence and sexual abuse. I have also worked in Bosnia (1994-95; 1997-1998), Kosovo (1999), Cyprus (1999), Greece (2000), Uganda (2006), and Liberia (2006)  with individuals and families traumatized by war, gender-based violence, and forced migration.  I currently provide consultation, training and clinical services to several humanitarian relief organizations regarding issues of crisis, trauma, grief and loss, with a multinational workforce.

3.  I have received specialized training with Doctors of the World in the psychological evaluation of refugees, immigrants, and torture survivors, and have been conducting such evaluations since 1995.

Reason for Referral:

4.  Rose Ngassam was referred by her attorney, Jenny-Brooke Condon, at the Seton Hall Center for Social Justice for assessment of psychological functioning related to the denial of her petition for family reunification.  Ms. Ngassam had previously received counseling and a psychological evaluation at the IINJ Program for Survivors of Torture in 2003, while she pursued her asylum claim.  At that time, I was the supervisor of her therapist, Evens Lafontant.  Dr. Lafontant no longer works for the IINJ.

5. I interviewed Rose Ngassam on July 31st, 2007 at the IINJ offices in Jersey City.  The interview was conducted with the assistance of a French-speaking interpreter, Pasqualine Assali, a staff member at the IINJ.  Also present, at Ms.

Ngassam's request, was case manager, Michelle Mason, from the Salvation Army program Ms. Ngassam attends in the Bronx. The examination took approximately two hours to complete.


Background Information:

6.  Ms. Ngassam was granted asylum in the United States in the summer of 2003 after suffering imprisonment, beatings, and torture in her native Cameroon at the hands of the police for her political activism and work to prevent the spread of AIDS.  Her second husband, a soldier, was both verbally and physically abusive towards her for these activities.

7.  Ms. Ngassam's first marriage, arranged when she was still a teenager, produced twins and later ended in divorce. She went on to have 5 more children with her second husband.  All of her children but one remain in Cameroon.

Mental Status Examination:

8. Rose Ngassam is a 44-year-old African woman, separated from her abusive spouse, and living in the Bronx, NY.  Moderately overweight, and of medium-to-large stature, she presents as a deeply emotional woman many years older that her age, whose distress is quite apparent. She was neatly dressed for the interview in traditional African attire. Ms. Ngassam was cooperative with all aspects of the interview. Ms. Ngassam presents as a depressed woman. Eye contact was minimal, and although some of this characteristic may be cultural, it also appeared to reflect her general sadness, sense of despair, and a drawing into herself as the interview wore on.  Several times during the interview, Ms. Ngassam appeared to dissociate, that is to drift off into her own thoughts, softly talking to herself, a phenomenon she acknowledged: "Sometimes I act like a fool, talk to myself, lose my sense." As the interview progressed, she held her head in her hands, acknowledging, when asked, that her head was hurting.  Ms. Ngassam gave an overall impression of significant depression and extreme psychological fragility during the interview.

9.  Ms. Ngassam was oriented to place, person and time.  As mentioned, she was fully cooperative with the interview, although on several occasions, she seemed to retreat in to her own world and required prompting to regain focus on the conversation.  Her speech was clear.  There were sometimes long pauses before she answered, and often the quality of her speech was pressured and agitated; pauses between question and answer became longer as the interview progressed  She described her mood as sad. Affect is very sad, restricted in range, and blunted in quality.  Thought content revealed no indications of a psychotic process, such as perceptual disturbances (no hallucinations or delusions). Thought process is marked by a ruminative and obsessive quality. Ms. Ngassam acknowledges that she "wants a specialist to help me with my

head." She is disturbed by her lapses in concentration wherein she "forgets" what she is doing and will have to be reminded of the original by a friend. Beyond being a general characteristic of her thinking, however, this ruminative style appears related to her significant depression at this time. Intellectual abilities are estimated to be in the high average or superior range as indicated by her educational level and articulate self-expression. Although she preferred to speak in French, she was quite in tune with the interpretation abilities of the interpreter, and the quality of the interpreter's French-language skills. Long-term memory is intact. Short-term memory appears mildly impaired, which is likely a consequence of her depression and the extreme level of psychological distress she is experiencing. Judgment is good, insight is good. Of clinical significance is Ms. Ngassam's dissociation, or drifting off into her own world. By the end of the interview, it became more difficult for Ms. Ngassam to answer questions: "Now everything is mixed up in my mind," she acknowledged.

Current Psychological Status:

10. Ms. Ngassam's current psychological condition can best be described as markedly fragile. She is suffering from the residual effects of severe trauma related to the events she experienced in Cameroon that led to her fleeing, combined with severe clinical depression related to the prolonged waiting period for reunification with her children and, ultimately, the denial of her request. The intensity and magnitude of the denial has served to greatly destabilize her. She admits crying "too much," "not wanting to do anything," and eating to bring her comfort ("I always hope eating will help; but it does not.") Emotional by nature, Ms. Ngassam is fighting with her whole body and mind to hold onto some hope, in the face of feeling helpless and depleted: "When I lose hope, I will die," she states. Although she denies suicidal thoughts because of her religion, she is assessed to be at significant risk of worsening psychological and physical condition and warrants a psychiatric examination for a possible course of medication. When this was brought up, however, Ms. Ngassam balked: "The solution to my problems is to be with my children. What can a doctor do about that?"

11. Ms. Ngassam's psychological distress is also being manifested in physical symptoms. She reports considerable difficulty sleeping, only sleeping for short segments through the night, and having this limited sleep disrupted by frequent nightmares, most often involving the death of her children. This sleeplessness leads to involuntary napping during the day. Although she could not elaborate, she acknowledged "my body is not well." She underwent gall bladder surgery shortly after winning her asylum case. The impact of stress on her health is of considerable concern, given her past health problems and current condition.

Depression Indicators:

3

12. Ms. Ngassam currently suffers from a number of symptoms and reactions consistent with severe clinical depression, as well as profound grief, guilt, and shame in not being able to parent and protect her children. In addition, Ms. Ngassam suffers from other depression indicators, including:.

  a. Multiple somatic complaints – headaches, sleeping difficulties, appetite changes with weight gain, fatigue. These symptoms are also consistent with depression. As depression is the disorder that most frequently occurs along with traumatic reactions, there is often considerable overlap in these two syndrome presentations in respect to physical symptoms.

  b  Difficulties in emotional regulation – Ms. Ngassam struggles to maintain emotional equilibrium. She feels overwhelmed by internal fears and external demands. She may suffer from an underlying psychological vulnerability to stress that renders her severely depressed as a consequence of experiencing the emotional upheaval resulting from the original trauma suffered in Cameroon and the current despair over the denial of her children's petition.

Analysis:

13. Ms. Ngassam presents with a psychological profile that is characteristic of someone who has been traumatized and is experiencing both residual effects of that trauma plus significant depression. Difficulties in functioning result. Her current psychological status meets the criteria for Major Depressive Disorder as described in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), published by the American Psychiatric Association (APA. 1994). (This manual is used as the standard text for the diagnosis of psychological disorders.)

14. Ms. Ngassam's depression is fueled by circumstances over which she feels she has little or no control, despite all of her efforts on her children's behalf. She feels a deep fear for the welfare of her children she left behind to save her own life, yet powerless to facilitate the relocation of her children to the U.S, where they would be safe. The option of return to Cameroon to be with them is impossible because her own life would be in grave danger. The only course that would support their safety as well as hers -- family reunification in the U.S.-- has been denied. This denial has served as the catalyst for a deep decline in Ms. Ngassam's emotional and physical functioning. Indeed, her primary coping mechanism enabling her to survive persecution and torture in Cameroon in the first place was the belief that one day – by the grace of God -- she and her children would be together again in a safe and secure environment. That belief, though still somewhat intact, is gradually eroding due first to the prolonged delay in processing the reunification request, but, most significantly, to the recent denial. This leaves her in a precarious psychological state, with very little in the

way of internal coping resources, placing her at risk for further decline.

Conclusion:

14.  It is my opinion that Ms. Ngassam is suffering from Major Depressive Disorder, as a result of the denial of her petition to bring her children from Cameroon to live with her here in the U.S.  This reaction is complicated by past experiences of extreme and severe trauma, including 3 periods of imprisonment by Cameroonian police (during which times she was severely beaten, cut with a machete, branded with a hot iron, and deprived of food and water); rapes by the police following interrogations, and death threats by her husband, a gendarme. All resulted from her activities with a grass-roots group in Cameroon fighting to prevent the spread of AIDS, and her membership in the political opposition party. After she fled Cameroon in order to save her life, the police began to target her children, a phenomenon which exacerbated her post-trauma reactions, sparking extreme distress and feelings of desperation and helplessness.  On-going separation from her children -- and their continued endangerment – has served to undermine her precarious psychological functioning and prevent recovery and rehabilitation from the horrors of her past.

15.  Furthermore, It is my strong opinion that Ms. Ngassam cannot psychologically tolerate further delay in reunification with her children. Presently, hope of that unification, buttressed by religious faith, is the only thing that keeps her functioning at all.  With each passing day, as the dream of reunification with her children in the safety of the U.S. becomes more elusive, that hope dissipates; with each day, she sinks further into despair. Consequently, without immediate action to allow her to bring her children to the U.S., Ms. Ngassam is at risk of further psychological and physical decline, up to and including suicidality.  Ms. Ngassam has been referred to a Bronx resource for individual psychotherapy for treatment of depression and trauma, and for a psychiatric/medication evaluation for treatment of severe depression and to monitor the level of suicide risk.

16. By signing my name below, I attest that I personally evaluated Ms. Rose Ngassam  on July 31st, 2007, and that the findings included in this report are a true representation of my evaluation.

Sara Kahn, LCSW

8/22/07
August 21, 2007

Marilyn Crowe 8/22/07
MARILYN CROWE
Notary Public, State of New York
Qualified in Bronx County
Reg. No. 01CR128415
My Commission Expires 06-13-2009

5

# EXHIBIT 6

SETON HALL UNIVERSITY SCHOOL OF LAW
# CENTER FOR SOCIAL JUSTICE
IMMIGRATION AND HUMAN RIGHTS CLINIC
833 McCarter Highway
Newark, New Jersey 07102



Lori Nessel, Esq., Director
nessello@shu.edu

(973) 642-8700
Fax (973) 642-5939

April 4, 2005

Susan Raufer, Director
U.S. Department of Homeland Security
Newark Asylum Office
1200 Wall Street West, 4th Floor
Lyndhurst, NJ 07071

**Re: Rose NGASSAM, A96-261-832, Asylee Relative Petitions (Form I-730) <u>Pending at the Newark Asylum Office</u> after being transferred by the CIS Nebraska Service Center**

Dear Ms. Raufer:

We represent Ms. Rose Ngassam in her immigration matters. Ms. Ngassam was granted asylum by your office on June 3, 2003. I am writing to request your assistance with regards to Ms. Ngassam's relative petitions for her seven children. The I-730 applications were received by the Nebraska Service Center on September 15, 2003. We have since been informed that **the I-730 applications were transferred to the Newark Asylum Office for adjudication on June 23, 2004**.

I last spoke to you about this issue at the Asylum Liaison Meeting in December 2004. Although we have attempted to contact numerous officials within the Department of Homeland Security since that time, there has been no movement on this case. The delay in adjudication of these refugee asylees relative petitions runs counter to the humanitarian need to reunite asylees and their family members. In addition, **Ms. Ngassam's children are living in hiding, and are in extreme danger.**

I have attached printouts of the online case status page for each of Ms. Ngassam's seven relative petitions. (Receipt numbers: LIN-03-267-55141; LIN-03-267-55229; LIN-03-267-55227; LIN-03-267-55217; LIN-03-267-55177; LIN-03-267-55210; and LIN-03-267-55223). Please let us know what we can do to ensure that these petitions are adjudicated as quickly as possible.

Thank you for your immediate attention to this important matter. We appreciate any assistance or guidance you may be able to provide. Please do not hesitate to contact me if you have any questions.

Sincerely,

Anjum Gupta, Esq.
Clinical Fellow

# EXHIBIT 7

# THE UNITED STATES OF AMERICA

| | |
|---|---|
| **RECEIPT NUMBER** LIN-03-267-55223 | **CASE TYPE** I730<br>REFUGEE ASYLEE RELATIVE PETITION |
| **RECEIPT DATE** September 15, 2003 | **PRIORITY DATE** | **PETITIONER** A096 261 832<br>NGASSAM AMOUGOU, ROSE |
| **NOTICE DATE** May 12, 2005 | **PAGE** 1 of 1 | **BENEFICIARY** A097 588 415<br>TCHAPTCHEP, PEGUI WILLIAM |

LORI NESSEL ESQ
CTR FOR SOCIAL JUS
833 MCCARTER HIGHWAY
NEWARK NJ 07102

Notice Type:  Approval Notice

Class: ASY

Your Refugee/Asylee Relative Petition for the family member(s) listed on this notice has been approved in accordance with Section 208 of the Immigration and Nationality Act and forwarded to the Department of State National Visa Center, 32 Rochester Ave., Portsmouth, NH 03801. This completes all INS action on this petition.

The Department of State will notify the U.S. Embassy or Consulate abroad having jurisdiction over the area where your relative(s) resides.  The consular post will contact your relative(s) regarding procedures to be followed for travel to the United States.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

MAY 2 0 2005

Please see the additional information on the back.  You will be notified separately about any other cases you filed.
NEBRASKA SERVICE CENTER
U. S. IMMIG. & NATZ. SERVICE
P.O. BOX 82521
LINCOLN NE 68501-2521
**Customer Service Telephone: 800-375-5283**



# THE UNITED STATES OF AMERICA

| | |
|---|---|
| **RECEIPT NUMBER**<br>LIN-03-267-55227 | **CASE TYPE** I730<br>REFUGEE ASYLEE RELATIVE PETITION |
| **RECEIPT DATE**<br>September 15, 2003    **PRIORITY DATE** | **PETITIONER** A096 261 832<br>NGASSAM AMOUGOU, ROSE |
| **NOTICE DATE**<br>May 12, 2005    **PAGE**<br>1 of 1 | **BENEFICIARY** A097 588 416<br>BIAKOP, DUCLO ROMUALD |

LORI NESSEL ESQ
CTR FOR SOCIAL JUS
833 MCCARTER HIGHWAY
NEWARK NJ 07102

**Notice Type:**   Approval Notice
**Class: ASY**

Your Refugee/Asylee Relative Petition for the family member(s) listed on this notice has been approved in accordance with Section 208 of the Immigration and Nationality Act and forwarded to the Department of State National Visa Center, 32 Rochester Ave., Portsmouth, NH 03801. This completes all INS action on this petition.

The Department of State will notify the U.S. Embassy or Consulate abroad having jurisdiction over the area where your relative(s) resides. The consular post will contact your relative(s) regarding procedures to be followed for travel to the United States.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

---

Please see the additional information on the back. You will be notified separately about any other cases you filed.
NEBRASKA SERVICE CENTER
U. S. IMMIG. & NATZ. SERVICE
P.O. BOX 82521
LINCOLN NE 68501-2521
**Customer Service Telephone: 800-375-5283**



Case 1:07-cv-08172-LLS    Document 12-3    Filed 10/12/2007    Page 27 of 31

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER | | CASE TYPE I730 |
|---|---|---|
| LIN-03-267-55141 | | REFUGEE ASYLEE RELATIVE PETITION |

| RECEIPT DATE | PRIORITY DATE | PETITIONER A096 261 832 |
|---|---|---|
| September 15, 2003 | | NGASSAM AMOUGOU, ROSE |

| NOTICE DATE | PAGE | BENEFICIARY A097 588 411 |
|---|---|---|
| May 12, 2005 | 1 of 1 | KAMWA, ACHILLE MARTIAL |

LORI NESSEL ESQ
CTR FOR SOCIAL JUS
833 MCCARTER HIGHWAY
NEWARK NJ 07102

Notice Type:  Approval Notice
Class: ASY

Your Refugee/Asylee Relative Petition for the family member(s) listed on this notice has been approved in accordance with Section 208 of the Immigration and Nationality Act, and forwarded to the Department of State National Visa Center, 32 Rochester Ave., Portsmouth, NH 03801. This completes all INS action on this petition.

The Department of State will notify the U.S. Embassy or Consulate abroad having jurisdiction over the area where your relative(s) resides.  The consular post will contact your relative(s) regarding procedures to be followed for travel to the United States.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

Please see the additional information on the back.  You will be notified separately about any other cases you filed.
NEBRASKA SERVICE CENTER
U. S. IMMIG. & NATZ. SERVICE
P.O. BOX 82521
LINCOLN NE 68501-2521
Customer Service Telephone: 800-375-5283



Form I-797 (Rev. 08/31/04) N

# THE UNITED STATES OF AMERICA

| | |
|---|---|
| **RECEIPT NUMBER** <br> LIN-03-267-55177 | **CASE TYPE** I730 <br> REFUGEE ASYLEE RELATIVE PETITION |
| **RECEIPT DATE** <br> September 15, 2003   **PRIORITY DATE** | **PETITIONER** A096 261 832 <br> NGASSAM AMOUGOU, ROSE |
| **NOTICE DATE** <br> May 12, 2005   **PAGE** <br> 1 of 1 | **BENEFICIARY** A097 588 412 <br> YANOU, ROBERTINE |

LORI NESSEL ESQ
CTR FOR SOCIAL JUS
833 MCCARTER HIGHWAY
NEWARK NJ 07102

**Notice Type:** Approval Notice
**Class:** ASY

Your Refugee/Asylee Relative Petition for the family member(s) listed on this notice has been approved in accordance with Section 208 of the Immigration and Nationality Act, and forwarded to the Department of State National Visa Center, 32 Rochester Ave., Portsmouth, NH 03801. This completes all INS action on this petition.

The Department of State will notify the U.S. Embassy or Consulate abroad having jurisdiction over the area where your relative(s) resides. The consular post will contact your relative(s) regarding procedures to be followed for travel to the United States.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
NEBRASKA SERVICE CENTER
U. S. IMMIG. & NATZ. SERVICE
P.O. BOX 82521
LINCOLN NE 68501-2521
**Customer Service Telephone: 800-375-5283**



Form I-797 (Rev. 08/31/04) N

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>LIN-03-267-55217 | | CASE TYPE   I730<br>REFUGEE ASYLEE RELATIVE PETITION |
|---|---|---|
| RECEIPT DATE<br>September 15, 2003 | PRIORITY DATE | PETITIONER   A096 261 832<br>NGASSAM AMOUGOU, ROSE |
| NOTICE DATE<br>May 12, 2005 | PAGE<br>1 of 1 | BENEFICIARY   A097 588 414<br>TEUMEN, BRICE MARIUS |

LORI NESSEL ESQ
CTR FOR SOCIAL JUS
833 MCCARTER HIGHWAY
NEWARK NJ 07102

**Notice Type:**  Approval Notice

**Class:** ASY

Your Refugee/Asylee Relative Petition for the family member(s) listed on this notice has been approved in accordance with Section 208 of the Immigration and Nationality Act, and forwarded to the Department of State National Visa Center, 32 Rochester Ave., Portsmouth, NH 03801. This completes all INS action on this petition.

The Department of State will notify the U.S. Embassy or Consulate abroad having jurisdiction over the area where your relative(s) resides. The consular post will contact your relative(s) regarding procedures to be followed for travel to the United States.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
NEBRASKA SERVICE CENTER
U. S. IMMIG. & NATZ. SERVICE
P.O. BOX 82521
LINCOLN NE 68501-2521
**Customer Service Telephone: 800-375-5283**



Form I-797 (Rev. 08/31/04) N

# THE UNITED STATES OF AMERICA

| | |
|---|---|
| **RECEIPT NUMBER**<br>LIN-03-267-55229 | **CASE TYPE** I730<br>REFUGEE ASYLEE RELATIVE PETITION |
| **RECEIPT DATE**<br>September 15, 2003    **PRIORITY DATE** | **PETITIONER** A096 261 832<br>NGASSAM AMOUGOU, ROSE |
| **NOTICE DATE**<br>May 12, 2005    **PAGE**<br>1 of 1 | **BENEFICIARY** A097 588 417<br>TEUMEN, JACKSON MIGUEL |

LORI NESSEL ESQ
CTR FOR SOCIAL JUS
833 MCCARTER HIGHWAY
NEWARK NJ 07102

**Notice Type:** Approval Notice
**Class:** ASY

Your Refugee/Asylee Relative Petition for the family member(s) listed on this notice has been approved in accordance with Section 208 of the Immigration and Nationality Act and forwarded to the Department of State National Visa Center, 32 Rochester Ave., Portsmouth, NH 03801. This completes all INS action on this petition.

The Department of State will notify the U.S. Embassy or Consulate abroad having jurisdiction over the area where your relative(s) resides.  The consular post will contact your relative(s) regarding procedures to be followed for travel to the United States.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

Please see the additional information on the back.  You will be notified separately about any other cases you filed.
NEBRASKA SERVICE CENTER
U. S. IMMIG. & NATZ. SERVICE
P.O. BOX 82521
LINCOLN NE 68501-2521
**Customer Service Telephone: 800-375-5283**



Form I-797 (Rev. 08/31/04) N

# THE UNITED STATES OF AMERICA

| | |
|---|---|
| **RECEIPT NUMBER**<br>LIN-03-267-55210 | **CASE TYPE** I730<br>REFUGEE ASYLEE RELATIVE PETITION |
| **RECEIPT DATE**<br>September 15, 2003     **PRIORITY DATE** | **PETITIONER** A096 261 832<br>NGASSAM AMOUGOU, ROSE |
| **NOTICE DATE**<br>September 22, 2005    **PAGE** 1 of 1 | **BENEFICIARY** A097 588 413<br>YIMGA, JUNIOR |

LORI NESSEL ESQ
CENTER FOR SOCIAL JUSTICE
SETON HALL LAW
833 MCCARTER HIGHWAY
NEWARK NJ 07102

**Notice Type:** Approval Notice
**Class:** ASY

Your Refugee/Asylee Relative Petition for the family member(s) listed on this notice has been approved in accordance with Section 208 of the Immigration and Nationality Act, and forwarded to the Department of State National Visa Center, 32 Rochester Ave., Portsmouth, NH 03801. This completes all INS action on this petition.

The Department of State will notify the U.S. Embassy or Consulate abroad having jurisdiction over the area where your relative(s) resides. The consular post will contact your relative(s) regarding procedures to be followed for travel to the United States.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
NEBRASKA SERVICE CENTER
U. S. IMMIG. & NATZ. SERVICE
P.O. BOX 82521
LINCOLN NE 68501-2521
**Customer Service Telephone: 800-375-5283**

