UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **ROSE AMOUGOU NGASSAM** : <br> : <br> **Plaintiff,** : <br> : <br> : <br> v. : <br> : <br> : <br> **MICHAEL CHERTOFF,** : <br> **Secretary of Department of Homeland** : <br> **Security; EMILIO GONZALEZ,** : <br> **Director of United States Citizenship &** : <br> **Immigration Services, F. GERARD** : <br> **HEINAUER, Director of the Nebraska** : <br> **Service Center of United States** : <br> **Citizenship & Immigration Services** : <br> : <br> : <br>          **Defendants.** : | Case No: 07 Civ. 8172 (LLS) <br><br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS ORDER TO SHOW CAUSE
FOR A PRELIMINARY INJUNCTION**

Bryan Lonegan, Esq.
Jenny-Brooke Condon, Esq.
Jisun Chang (law student intern)
Gal Davidovitch (law student intern)
Center for Social Justice

Seton Hall Law School
833 McCarter Highway
Newark, New Jersey 07102

*Attorneys for Plaintiff*
Rose Ngassam

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 4

ARGUMENT ........................................................................................................................... 5

I.     IF PRELIMINARY INJUNCTIVE RELIEF IS DENIED MS. NGASSAM WILL SUFFER IRREPARABLE PSYCHOLOGICAL AND EMOTIONAL HARM CAUSED BY FURTHER SEPARATION FROM HER CHILDREN, WHO REMAIN IN DANGER IN CAMEROON. ................................................................. 5

       A.    Ms. Ngassam's Risk of Psychological Decline Up to and Including Possible Suicidality Constitutes Irreparable Harm............................................. 6

       B.    The Risk That Ms. Ngassam's Children Will "Age-Out" and Lose Their Eligibility for Derivative Asylum Constitutes Irreparable Harm...............10

II.    MS. NGASSAM IS HIGHLY LIKELY TO SUCCEED ON THE MERITS BECAUSE THE AGENCY DECISION IS UNLAWFUL UNDER THE APA.......10

       A.    The Agency Decision Misapplied the Law.............................................11

       B.    The Agency Decision Was Not Supported by Evidence in the Record.........13

III.   IN THE ALTERNATIVE, MS. NGASSAM HAS PRESENTED SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS OF HER CASE AND THE BALANCE OF HARDSHIPS POINT IN HER FAVOR WARRANTING PRELIMINARY INJUNCTIVE RELIEF...............................................................14

CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

Cases                                                                                           Page(s)

<u>Bolthouse v. Continental Wingate Co., Inc.</u>, 656 F.Supp. 620 (W.D.Mich. 1987) ...................... 7

<u>Cerro Metal Products v. Marshall</u>,
    620 F.2d 964 (3d Cir. 1980) ............................................................................................. 15

<u>Choratch v. Finch</u>, 438 F.2d 342, 343 (3d Cir.1971) ..................................................................... 12

<u>Dubois v. United States Dep't of Agriculture</u>,
    102 F.3d 1273 (1st Cir. 1996) ............................................................................................ 13

<u>Freedom Holdings, Inc. v. Spitzer</u>, 408 F.3d 112, 114 (2nd Cir. 2005) .................................. 5, 14

<u>Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.</u>, 596 F.2d 70, 72 (2d Cir.1979) (per curiam) ....... 5

<u>Kamerling v. Massanari</u>, 295 F.3d 206, 214 (2nd Cir. 2002) ............................................. 5, 8, 10

<u>Ma v. Ashcroft</u>, 361 F.3d 553 (3d Cir. 2004) ............................................................................... 14

<u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>
    463 U.S. 29 (1983) ............................................................................................................. 13

<u>Oshiver v. Court of Common Pleas, Court Administration</u>, 469 F.Supp. 645 (E.D. Pa. 1979) .... 7

<u>Rodriguez v. DeBuono</u>, 175 F.3d 227, 234 (2d Cir.1999) (per curiam) ...................................... 5,8

<u>Soltane v. U.S. Dep't. of Justice</u>,
    381 F.3d 143 (3d Cir. 2004) ........................................................................................... 11-12

<u>Tucker Anthony Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 975 (2d Cir.1989) .......................... 8

<u>Vencor Nursing Centers, L.P. v. Shalala</u>, 63 F.Supp.2d 1(D.D.C. 1999) .................................... 7

**Statutes**

5 U.S.C. § 706(a)(2) ........................................................................................................................ 7

8 U.S.C. § 1101(b)(1) .................................................................................................................... 10

Pub.L. No. 107-208, 116 Stat. 927 (2002) ................................................................................... 10

**Regulations**

8 C.F.R. § 103.2(b)(8) .................................................................................................................. 12

8 C.F.R. § 103.2(b)(16)(i) .................................................................................................... 12

8 C.F.R. § 208.2(d)(2)(i) ........................................................................................................ 5

Case 1:07-cv-08172-LLS    Document 18    Filed 10/16/2007    Page 4 of 20

## **PRELIMINARY STATEMENT**

Rose Ngassam, a torture survivor and political asylee from Cameroon, seeks the urgent intervention of this Court to vindicate her right to reunite with the children whom she was forced to leave behind in Cameroon when she fled for her life in 2002. Although the immigration law grant asylees like Ms. Ngassam the immediate right to reunite with qualifying family members and Ms. Ngassam has submitted extensive evidence of her children's eligibility for derivative asylum, on April 30, 2007, the U.S. Citizenship and Immigration Service ("USCIS") denied three of Ms. Ngassam's seven asylee-relative petitions without a valid legal or statutory basis. As a result, Ms. Ngassam has experienced severe psychological trauma driven by her fear for her children's safety in Cameroon and her nearly five-year long separation from her family. This complaint challenges the agency's decision and its arbitrary delay and actions in Ms. Ngassam's case leading up to that decision. The unlawful actions of USCIS have wrongfully prolonged Ms. Ngassam's separation from her children and exacerbated her severe psychological trauma.

The agency's decision should be set aside because it violates the agency's own regulations, the Administrative Procedures Act ("APA"), and Ms. Ngassam's rights under the Due Process Clause of the U.S. Constitution. Specifically, in denying the petitions, USCIS wholly ignored material evidence in the record establishing the children's eligibility for derivative asylum in violation of APA. Although acknowledging that DNA evidence submitted by Ms. Ngassam scientifically proved her biological relationship to the children, USCIS failed to consider—or even mention—official duplicates of the children's birth certificates, which establish the children's age and eligibility for asylee-relative status. The agency failed to follow its own regulations that consider birth certificates to be primary evidence of a child's eligibility to reunite with an asylee-mother. The failure to do so was arbitrary and capricious, and rendered the agency's decision against the weight of the evidence in violation of the APA.

Ms. Ngassam seeks emergent relief from the court to remedy those wrongful actions because of the irreparable injury that she and her children will face if immediate relief is not granted. As recounted in her asylum affidavit, after Ms. Ngassam fled Cameroon in 2002, the police targeted two of her sons, and arrested and tortured them. Just recently, Ms. Ngassam received the devastating news that armed men in military fatigues invaded her house in Douala, Cameroon, beat one of her sons and raped her daughter repeatedly. As confirmed by a psychological evaluation submitted in support of this motion, Ms. Ngassam's psychological condition has deteriorated significantly in recent months on account of her heightened fear for her family's safety and the agency's arbitrary denial of reunification. As a torture survivor who has never had the opportunity to heal from the wounds of her past, Ms. Ngassam has experienced severe trauma on account of the prolonged separation from her children. She experiences constant anguish, profound worry, and guilt related to her inability to protect her children. In light of the threat of further psychological injury to Ms. Ngassam and the threat of further harm to her children, the agency's wrongful denial of derivative asylum to Ms. Ngassam's children warrants emergent relief from this Court.

Moreover, USCIS's wrongful denial is part of a pattern of unnecessary delay and arbitrary actions by the agency that demonstrate an unwillingness or inability to resolve this matter in the ordinary course. As described in the Complaint and Affidavit of Jenny-Brooke Condon, Esq., USCIS initially lost Ms. Ngassam's filed petitions, causing her case not to be adjudicated for nearly two years. USCIS then rejected material evidence submitted by Ms. Ngassam, further delaying her case, and has failed to respond to numerous requests from her counsel to consider supplemental evidence in the record. The agency's record of haphazard delay and unlawful actions in this case suggests that it will not rectify its errors or expeditiously

end Ms. Ngssam's suffering without immediate intervention of the Court. In addition, as explained more fully below, at least one of Ms. Ngassam's children, whose petition was denied, is close to turning twenty-one. Thus, unless this matter is resolved expeditiously, he risks losing his eligibility for derivative asylum and reunification with his mother.

Ms. Ngassam does not dispute that her case was complicated by her initial, unwitting submission of faulty birth certificates to USCIS in support of her children's petitions. However, from the moment she discovered the problem in 2005, she has taken every step possible to rectify the matter and prove conclusively her children's eligibility to reunite with her in safety. First, she obtained official certified duplicates of the children's birth certificates from the local authorities in Cameroon. In numerous correspondences with the agency, Ms. Ngassam made clear that she was withdrawing reliance on the first set of birth certificates and that USCIS should review the official certified duplicates of the children's birth certificates obtained form the local Cameroonian authorities. Next, to alleviate any remaining concerns about her biological relationship with her children, Ms. Ngassam underwent DNA testing to prove her relationship with her children.[1] The DNA test results unequivocally prove that Ms. Ngassam is the biological mother of the children—a fact that USCIS does not dispute.

Instead, in denying family reunification, USCIS suggested that Ms. Ngassam had not established that her children were eligible as asylee-relative children—specifically that the record did not establish that the children were under 21 years of age. In reaching that conclusion, however, USCIS ignored the official certified duplicates of the children's birth

---

[1] Ms. Ngassam first secured DNA testing for four of her children, giving priority to the three children whose petitions had been reopened by USCIS and were in danger of being denied. She has since started the process of DNA testing for the remaining three children, whose petitions currently remain approved.

3

certificates that Ms. Ngassam had submitted in support of her petitions on two separate occasions, and repeatedly referenced in correspondence with the agency.

Here, a meaningful examination of the record unequivocally demonstrates that Ms. Ngassam's children whose petitions were denied were born on May 10, 1987 (Brice Marius Teumen, currently age 20), June 22, 1989 (Duclo Romuald Biakop, currently age 18), and April 6, 1990 (Pegui William Tchaptchep, currently age 17). See Ex. 26 (certified duplicates of the children's birth certificates)[2]. Those children are under 21 years of age and therefore, eligible under the law to reunite with their mother in safety. Accordingly, Ms. Ngassam respectfully requests that this Court declare the Agency decision unlawful under the APA. Moreover, in light of the overwhelming evidence in the record, Ms. Ngassam further requests that this Court issue a preliminary injunction requiring the Agency to immediately approve the petitions, so that the children may be reunited with their mother in the United States. In light of the agency's record of arbitrary delay and disregard for her rights in this case, she further seeks an order from the Court compelling USCIS to facilitate the expeditious visa processing of all of her children's visas and prompt reunification with all six of her children who remain in Cameroon.

## FACTUAL BACKGROUND

The facts relevant to this case are set forth in detail in the Complaint accompanying this Memorandum of Law, as well as the Affidavits of Jenny-Brooke Condon, Esq., Sarah Kahn, M.S.W., and Rose Ngassam submitted in Support of the Order to Show Cause for a Preliminary Injunction. Ms. Ngassam relies upon those factual assertions and incorporates them herein.

---

[2] All Exhibits referenced herein are attached to the Affidavit of Jenny-Brooke Condon, Esq. in Support of Order to Show Cause for Preliminary Injunction.

## ARGUMENT

It is well-established in the Second Circuit that a party seeking a preliminary injunction must show: (1) irreparable harm in the absence of an injunction, and either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them fair ground for litigation and that a balance of hardships tips decidedly in the movant's favor. Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2nd Cir. 2005); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979) (per curiam). Here, in light of the agency's clear violation of its own regulations, as well as the ongoing psychological injury to Ms. Ngassam on account of the threat of serious harm to her children in Cameroon, Ms. Ngassam has demonstrated a likelihood of success on the merits and exigent circumstances that warrant a preliminary injunction.

I.   **IF PRELIMINARY INJUNCTIVE RELIEF IS DENIED MS. NGASSAM WILL SUFFER IRREPARABLE PSYCHOLOGICAL AND EMOTIONAL HARM CAUSED BY FURTHER SEPARATION FROM HER CHILDREN, WHO REMAIN IN DANGER IN CAMEROON.**

To establish irreparable harm for a preliminary injunction in the Second Circuit, the "moving party must show that injury is likely before the other requirements for an injunction will be considered." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (citing Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir.1999) (per curiam)). In addition, the harm must be "continuing" and not capable of adequate redress by "final relief on the merits," nor adequately compensated by money damages. Id. In this case, clear evidence illustrates that Ms. Ngassam will suffer irreparable injury in the form of worsening psychological trauma if a preliminary injunction is not issued. Ms. Ngssam's daily, ongoing psychological and emotional injury can not be reversed by final relief on the merits. Moreover, the psychological distress and pain she experiences on account of her separation from her children and fear for their safety cannot be

5

fixed by money damages. In addition, Ms. Ngassam faces the irreparable harm of her children turning 21-years-old, or "aging out" from their eligibility for derivative asylum if a preliminary injunction is not issued.

### A. Ms. Ngassam's Risk of Psychological Decline Up to and Including Possible Suicidality Constitutes Irreparable Harm

As the psychological evaluation by Sara Kahn, M.S.W., recently noted, the agency's arbitrary denial of Ms. Ngassam's right to reunite with her children has caused a "deep decline in Ms. Ngassam's emotional and physical functioning." See Ex. 5, at ¶ 14 (Affidavit of Sara Kahn, M.S.W., Psychological Evaluation of Rose Ngassam). To begin with, Ms. Ngassam is a severely traumatized torture survivor who has not had the opportunity to heal emotionally or psychologically from her trauma because she has been separated from her children for nearly five years and has experienced constant torment, worrying about their safety. See id., at ¶ 10, 14 (noting that Ms. Ngassam "is suffering from the residual effects of severe trauma related to the events she experienced in Cameroon . . . combined with severe clinical depression related to the prolonged waiting period for reunification with her children and, ultimately, the denial of her request"). According to her recent psychological evaluation, Ms. Ngassam's "current psychological condition can best be described as markedly fragile." Id. ¶ 10. The agency's denial has left Ms. Ngassam in a "precarious psychological state, with very little in the way of internal coping resources, placing her at risk for further decline." Id. at ¶ 14.

In fact, Ms. Ngassam suffers from a number of symptoms "consistent with severe clinical depression" and suffers from Major Depressive Disorder. Id. at ¶ 14. She experiences "profound grief, guilt, and shame in not being able to parent and protect her children." Id. at ¶ 12. Her "psychological distress is also being manifested in physical symptoms," including "considerable difficulty sleeping," "frequent nightmares involving the death of her children,"

headaches, appetite changes, and fatigue. Id. at ¶ 11. Ms. Ngassam's psychological evaluator concluded that "Ms. Ngassam cannot psychologically tolerate further delay in reunification with her children . . . with each day she sinks further into despair. Ms. Ngassam is at risk of further psychological and physical decline, up to and including suicidality." Id. at ¶ 15. In light of those symptoms, Ms. Ngassam was recently referred for "individual psychotherapy for treatment of depression and trauma, and for psychiatric/medication evaluation for treatment of severe depression and to monitor the level of suicide risk." Id. at ¶ 15.

In short, the prolonged separation from her children has caused severe psychological trauma to Ms. Ngassam that is at "significant risk of worsening" in light of the denial of her children's petitions. Id. ¶ 10. The currently existing harm and significant risk of further psychological injury faced by Ms. Ngassam constitutes irreparable harm that can not be remedied without a preliminary injunction.

While the Second Circuit has not previously address the psychological harm to asylees caused by arbitrary separation from family members, other jurisdictions have recognized that a movant's claims of "subjective, psychological harm" are relevant factors in the irreparable-harm analysis. See, e.g., Vencor Nursing Centers, L.P. v. Shalala, 63 F.Supp.2d 1 (D.D.C. 1999) (noting that that residents of a nursing home seeking to enjoin an unwanted transfer to another facility may experience "transfer trauma" and that such psychological injury was relevant to the court's consideration of the motion for preliminary injunction); Oshiver v. Court of Common Pleas, Court Administration, 469 F.Supp. 645 (E.D. Pa. 1979) (noting that plaintiff demonstrated that she would suffer irreparable injury by presenting "credible evidence of nervous and emotional problems brought on by her dismissal" from her job); Bolthouse v. Continental Wingate Co., Inc., 656 F.Supp. 620 (W.D. Mich. 1987) (finding that "psychological setbacks and

7

emotional losses" suffered by disabled plaintiffs denied access to public housing constituted irreparable harm). Those courts recognize that psychological injury is a severe and often lasting harm that can not be retroactively erased. This Court should similarly find that the pain and psychic injury faced by Ms. Ngassam constitutes irreparable harm.

That conclusion is further compelled by the Second Circuit's requirement that irreparable harm be "shown to be actual and imminent, not remote or speculative." Kamerling, 295 F.3d at 214 (citing Rodriguez, 175 F.3d at 234; Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir.1989)). Here, Ms. Ngassam has submitted significant proof that her current psychological trauma and risk of further injury is not attenuated, but a current affliction corroborated by detailed psychological evidence. See Ex. 5. Moreover, Ms. Ngassam's fear for her children's safety, which has driven her severe anxiety and distress, is objectively reasonable. Since she fled Cameroon, she has received news that the police have arrested and abused several of her relatives, including two of her sons. See Ex. 2, Aff. Ngassam Asylum; Ex. 3; Aff. Ngassam Preliminary Injunction, at ¶¶ 14-15; 27-40. In addition, Ms. Ngassam received word shortly after she fled Cameroon, that her brother-in-law who helped her escaped was killed. She then learned last April that her brother was also killed. Ex. 3, at ¶ 26-45. Although Ms. Ngassam does not know many of the details surrounding those deaths because she is far removed from Cameroon and her family members have sought to minimize her distress by limiting her access to information, what she does know has increased her anxiety, distress, and guilt. Id. at ¶¶ 34-38.

Shortly before his death, Ms. Ngassam's brother, who had been watching over her children, expressed a fear of death and a desire that Ms. Ngassam's children leave Cameroon immediately. Id. Although he did not explain to Ms. Ngassam the basis for his fear, shortly

8

thereafter, she learned that her brother was shot and killed. Id. Ms. Ngassam has obtained corroboration of her brother's death; her family members sent her a copy of his death certificate, which makes clear that he died from unnatural causes, specifically "head trauma." See Ex. 24, Death Certificate of Jean Mangwa.

Ms. Ngassam recently received the devastating news that some of her children were attacked last month at her family home in Douala. Ex. 3, ¶¶ 46-51. According to Ms. Ngassam's nephew who lives in Germany and a neighbor who witnessed the event, armed men wearing camouflage entered the Ngassam home and raped Ms. Ngassam's daughter Robertine repeatedly while fighting off her brother Duclo, who tried to come to her aid. Ex. 3, Aff. Ngassam Preliminary Injunction, at ¶ at 45-46. Ms. Ngassam's daughter and son were then treated at a hospital. Ms. Ngassam's son Duclo obtained a copy of the medical records and faxed counsel those documents, which confirm that the children were treated at a Cameroonian hospital and summarizes the reasons for their treatment. See Ex. 25 Medical Records. While Ms. Ngassam does not know the exact reason for the attack on her children, she knows that there is no one in Cameroon to protect them. Since her brother was killed in April of last year, Ms. Ngassam fears that the security forces or other representatives of the regime in Cameroon will be undeterred from further harming her children. Ex. 3, Aff. Ngassam Preliminary Injunction, at ¶ at 45-46.

Based on the information relayed to her by family members and her neighbor, and the death certificate and hospital records she has obtained from Cameroon, Ms. Ngassam's fear for her children's safety is eminently reasonable. Moreover, in 2003, an asylum officer found Ms. Ngassam's claims of torture, rape, and persecution in Cameroon, as well as her fears for her family members' safety, to be credible. Thus, Ms. Ngassam's current psychological distress and

fear for her family's safety should not be considered lightly. As demonstrated by the psychological evidence presented by Ms. Ngsasam, and her reasonable fear for her family's safety, Ms. Ngassam's psychological distress is actual and imminent, not remote or speculative. See Kamerling, 295 F.3d at 214. Accordingly, irreparable psychological injury to Ms. Ngassam is likely if this Court does not issue a preliminary injunction.

### B. The Risk That Ms. Ngassam's Children Will "Age-Out" and Lose Their Eligibility for Derivative Asylum Constitutes Irreparable Harm

Ms. Ngassam's children whose petitions were denied are currently ages 17, 18, and 20. See Ex. 26 (certified duplicates of the children's birth certificates ignored by USCIS). The law requires that to be eligible for derivative asylum as a child of an asylee, the beneficiary must be under 21 years of age. 8 U.S.C.A. § 1101(b)(1). Unless Ms. Ngassam's claims are addressed expeditiously, there is a significant danger that at least of one of her sons will turn 21 and "age out" and no longer be eligible for derivative asylum. Although the law applies certain safe harbors for family members who "age out" of eligibility while their petitions are pending, see Pub.L. No. 107-208, 116 Stat. 927 (2002) (Child Status Protection Act), that law does not explicitly apply to individuals like Ms. Ngassam's sons, whose petitions have already been denied. Thus, it is entirely uncertain whether Ms. Ngassam's children would retain their eligibility for derivative asylum if the agency does not rectify its unlawful actions prior to their 21st birthdays. Given Ms. Ngassam's nearly four year separation from her children since she filed her petitions and the agency's history of arbitrary delay, this risk is actual, not attenuated, and constitutes irreparable harm.

### II. MS. NGASSAM IS HIGHLY LIKELY TO SUCCEED ON THE MERITS BECAUSE THE AGENCY DECISION IS UNLAWFUL UNDER THE APA

Under the APA, courts must set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(a)(2). Ms.

Ngassam challenges the denial of family reunification based on the agency's erroneous failure to consider material evidence in the record that establishes her children's eligibility for derivative asylum—the children's birth certificates. By ignoring that evidence, the Agency misapplied the law and reached a conclusion wholly inconsistent with the record. For these reasons, it is highly likely that Ms. Ngassam will succeed on the merits of her claims.

### A. The Agency Decision Misapplied the Law

The Agency's April 30, 2007 decision erroneously ignored primary evidence of the children's eligibility for derivative asylum—duplicates of their official birth certificates. In its decision, the Agency did not dispute that Ms. Ngassam is the biological mother of her children. Instead, it concluded that the children were ineligible for derivative asylum because there was insufficient evidence of their age. Pursuant to the immigration regulations, the immigration service considers a "birth certificate of the child showing the mother's name" to be "primary evidence" of a child's eligibility for derivative asylum based on his relationship to his mother. 8 C.F.R. § 204.2(d)(2)(i). In spite of its own regulations, the agency ignored the certified duplicates of the children's birth certificates submitted by Ms. Ngassam in violation of the APA.

The agency also did not consider Ms. Ngassam's Supplemental Affidavit that explained the steps she took to obtain the certificates from the local authorities in Cameroon, and to correct irregularities in her case. Ex. 23, at 1. Yet those were precisely the pieces of evidence (in addition to the DNA evidence) that Ms. Ngassam relied on to rebut the agency's Intent to Deny, and in fact highlighted, in support of her petition in roughly eight separate communications with USCIS. The agency's failure to follow its own regulations and consider the birth certificates was arbitrary and capricious, and should be set aside.

Courts interpreting the APA have noted that agencies cannot simply ignore relevant evidence in the record, but have an obligation to explain in reasonable detail why evidence submitted into the record is insufficient to meet the applicant's burden of proof. Soltane v. U.S. Dept. of Justice, 381 F.3d 143, 151-52 (3d Cir. 2004) (noting that decision did "not explain in any reasonable detail why" letter submitted by the applicant was insufficient to establish her eligibility for visa") (citing Richard J. Pierce, Jr., 2 Administrative Law Treatise § 11.2 at 791 (2002)); see also Choratch v. Finch, 438 F.2d 342, 343 (3d Cir.1971) ("We think it is not too much to require that an administrative decision that a claimant is not eligible . . . be supported by explicit findings of all facts that are essential to the conclusion of ineligibility."). Here, the agency made no effort to explain or suggest why it ignored Ms. Ngassam's material evidence. In fact, given the past delays and mistakes by the agency in this case, see Condon Affidavit, it is plausible that the agency's failure was not based on a reasoned decision, but simply inexcusable oversight.

Moreover, the agency's regulations place an obligation on the part of USCIS to request additional evidence if that which was already submitted is deemed insufficient. See 8 C.F.R. § 103.2(b)(8) (noting that where "initial evidence or eligibility information is missing or the Service finds that the evidence submitted either does not fully establish eligibility for the requested benefit or raises underlying questions regarding eligibility, the Service shall request the missing initial evidence") (emphasis added); 8 C.F.R. § 103.2(b)(16)(i) (stating that petitioners "shall be advised" of an adverse conclusion by USCIS "of which the applicant or petitioner is unaware" and "offered the opportunity to rebut the information and present information in his/her own behalf before the decision is rendered"). Thus, Ms. Ngassam was entitled to a consideration of her primary evidence of eligibility, and if the agency deemed that

evidence insufficient to establish eligibility for the status sought, she was entitled to an explanation as to why and the opportunity to rebut that determination. The agency's failure to follow its own regulations was arbitrary and capricious in violation of the APA.

### B. The Agency Decision Was Not Supported by Evidence in the Record

The agency decision is also unlawful under the APA because it was inconsistent with material evidence in the record. The Supreme Court has made clear that an agency decision is arbitrary and capricious where it "runs counter to the evidence" in the record. See Motor Vehicle Mfrs. Ass'n of U.S. v. State, 463 U.S 29, 43 (1983). Here, the evidence unequivocally demonstrates that Ms. Ngassam is not only the biological mother of her children whose petitions were denied—a fact proven by DNA evidence, which the agency does not dispute—but that the children each qualify for asylee relative status because they were under 21 years of age at the time Ms. Ngassam filed her petitions in September 2003. The record demonstrates that Ms. Ngassam's children whose petitions were denied were born on May 10, 1987 (Brice Marius Teumen, currently age 20), June 22, 1989 (Duclo Romuald Biakop, currently age 18), and April 6, 1990 (Pegui William Tchaptchep, currently age 17). See Ex. 26 (certified duplicates of the children's birth certificates).

Moreover, the Agency decision is also arbitrary and capricious under the APA because it simply "makes [no] sense." See Dubois v. United States Dep't of Agriculture, 102 F.3d 1273, 1285 (1st Cir. 1996) (recognizing that for agency decision "to pass muster under the 'arbitrary and capricious' test, the reviewing court must determine that the decision 'makes sense'") (citations omitted). In reaching its conclusion that Ms. Ngassam's children were not entitled to derivative asylum and reunification with their mother, the agency cited a consular memo form the U.S. embassy in Cameroon that noted that the embassy was "unable to confirm that the

beneficiaries named in [the] approved petition even existed." Ex. 23, at 2. However, the agency itself acknowledged in its decision that "the results of the DNA testing facility [prove Ms. Ngassam's] biological parentage of the children," thus establishing the existence of Ms. Ngassam's children. Id. at 1. In addition, the birth certificates ignored by the agency provided additional evidence of the children's identity. Thus, the agency's decision did not bear a relationship to the evidence in the record, and simply did not make sense.

In sum, the uncontradicted evidence in the record demonstrates beyond any reasonable doubt that Ms. Ngassam is the biological mother of her children, and those children are entitled to derivative asylum because the were under 21 years of age when Ms. Ngassam filed their petitions. In finding otherwise, the Agency issued a decision that plainly runs counter to the evidence in the record. As such, the decision is arbitrary and capricious, and must be set aside under the APA.

### III.   IN THE ALTERNATIVE, MS. NGASSAM HAS PRESENTED SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS OF HER CASE AND THE BALANCE OF HARDSHIPS POINT IN HER FAVOR WARRANTING PRELIMINARY INJUNCTIVE RELIEF.

Ms. Ngassam's nearly four year separation from her children since she filed her petitions, and the agency's record of arbitrary delay and failure to consider material evidence in the record pose "sufficiently serious questions going to the merits of the case" that make her claims "fair ground for litigation." See Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005). Moreover, in light of the extreme trauma experienced by Ms. Ngassam on account of her separation from her children, and the absence of harm to the agency, "the balance of hardships tips decidedly" in Ms. Ngassam's favor. As such, a preliminary injunction is warranted.

The risk of injury to Ms. Ngassam is acute, while the harm to the agency is slight. Courts have recognized that breaking families apart is a "harsh and arbitrary result" that is "at odds with

. . . significant parts of our overall immigration policy." See Ma v. Ashcroft, 361 F.3d 553 (3d Cir. 2004) (warning Agency not to "adopt a construction that leads to absurd results—the breakup of the family unit"). As a general matter, courts have also routinely recognized that an agency is not harmed by granting a preliminary injunction unless it would disrupt the agency's enforcement responsibilities, or would require the agency to alter its treatment of a large group. See, e.g., Cerro Metal Products v. Marshall, 620 F.2d 964, 973 (3d Cir. 1980) (holding that agency would not be harmed where preliminary injunction would not disrupt agency's ability to enforce OSHA, since relief would only affect two companies). Here, the agency would not be harmed in the slightest were this Court to grant preliminary injunctive relief. A preliminary injunction would not disrupt the Agency's enforcement responsibilities, but would simply require the Agency to do what is already required of it under governing law, i.e., consider the primary evidence of the children's eligibility for derivative asylum and grant the petitions accordingly. In short, because Ms. Ngassam will experience severe and lasting harm without an immediate remedy, the balance of hardships points in her favor and preliminary injunctive relief should be granted.

## CONCLUSION

For the reasons set forth herein, Ms. Ngassam respectfully requests that this Court declare the April 30, 2007 Agency decisions unlawful under the APA and, accordingly, issue preliminary and permanent injunctive relief requiring the Agency to immediately approve the wrongfully denied petitions. In light of the agency's record of arbitrary delay and disregard for Ms. Ngassam's rights, she further seeks an order from the Court compelling USCIS to facilitate the expeditious visa processing of all of her children's visas and prompt reunification with all six of her children who remain in Cameroon.

Respectfully Submitted,

*[signature]*

Bryan Lonegan, Esq. [BL5985]
Jenny-Brooke Condon, Esq. [JC7636]
Jisun Chang (student intern)
Gal Davidovitch (student intern)
Center for Social Justice
Seton Hall Law School
833 McCarter Highway
Newark, New Jersey 07102

*Attorneys for Petitioner*
Rose Ngassam

Dated: September 18, 2007

16